STATE OF NORTH CAROLINA v. JAMES EARL WILSON

No. 468A87

(Filed 6 April 1988)

1. Criminal Law § 75.2— rape—custodial statements—admissible

The trial court did not err in a prosecution for the first degree rape of defendant's eight-year-old sister by denying defendant's motion to suppress inculpatory statements made after an officer asked defendant "If he did it," told defendant to "look into his eyes," and told defendant that "you're going to have to tell us what happened." Defendant was made aware of his constitutional right to remain silent and to have an attorney present before questioning; defendant understood those rights and chose to speak; there was nothing to suggest that there were any actions on the part of the investigating officer that would have provoked fright in the defendant and overborn his will; nor was there any indication that defendant's statements were the products of threats or promises of reward.

2. Criminal Law § 87.2— nine-year-old witness—leading questions—no abuse of discretion

The trial court did not abuse its discretion by allowing leading questions to be asked of a nine-year-old rape victim where the subject matter was undoubtedly of a delicate nature and the situation was made more delicate by the fact that the child was having to testify against her older brother, not only in his presence, but in the presence of many strangers. There was nothing in the record to demonstrate that the prosecutor overstepped his bounds or badgered the young witness or succeeded in coercing her to say anything she was not prepared to say on her own.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment, entered by *Fountain, J.,* at the 27 April 1987 Criminal Session of Superior Court, MARTIN County. Heard in the Supreme Court 9 February 1988.

*Lacy H. Thornburg, Attorney General, by Laura E. Crumpler and David M. Parker, Assistant Attorneys General, for the State.*

*Daniel A. Manning, for defendant-appellant.*

FRYE, Justice.

Defendant raises three assignments of error on this appeal. After a thorough review of the record and the arguments made, we find no error in the trial of defendant and therefore will not disturb the ruling of the lower court.

The State's evidence tended to show that on an afternoon in January 1986, the twenty-one-year-old defendant, while his parents were away from the house, asked his eight-year-old sister to get on his bed, pull down her panties, and pull up her dress. Defendant then applied hair grease on the front and back sides of his sister and proceeded to have vaginal intercourse with her. Defendant admonished his sister not to tell anyone about the incident and if she ignored his admonition, he would whip her.

After receiving an anonymous call concerning the child on or about 21 January 1986, the Martin County Department of Social Services sent a representative to the young victim's school. There, the representative interviewed the child, and the child relayed to the agent the events that had transpired between herself and defendant. The agent received two other reports on 22 July 1986 and on 18 August 1986 and interviewed the child again on the later date in Robersonville where the child's family was then living. On 19 August 1986, SBI Agent Kent Inscoe accompanied the social services representative to conduct a follow-up interview with the child. The child relayed the same story to both adults. On this occasion, the child, using anatomically correct dolls, was asked to recreate what had occurred between the child and defendant. The child positioned the dolls so as to depict the act of vaginal intercourse.

The following day, Agent Inscoe "picked up" defendant at noon as he was coming in from a tobacco field for lunch and transported defendant to the Robersonville Police Department. After being advised of his *Miranda* rights, defendant was interrogated by law enforcement officials. During the course of this interrogation, defendant made incriminating statements. On 15 September

1986, defendant was indicted for the first degree rape of his sister.

At trial before a jury, defendant testified and admitted that in January 1986 at the family's home, he placed his young sister on her stomach and placed his penis between her legs. He denied, however, either vaginal or anal penetration. Defendant was convicted of first degree rape and sentenced to the mandatory term of life imprisonment. He now appeals to this Court as a matter of right.

[1] By his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress inculpatory statements. The State's evidence revealed that the investigating officer, after advising defendant of his rights, told defendant that the young victim had informed him that defendant had "messed" with her. The officer then asked defendant "if he did it." Defendant answered in the affirmative. The officer further asked defendant to "look into [his] eyes" and stated to defendant that "you're going to have to tell us what happened." Defendant then made further incriminating remarks. Defendant argues that he was commanded by the officer to tell what had transpired between defendant and his sister and that such a command violated his right to choose between silence and speech under the fifth amendment.

After hearing all the testimony at the suppression hearing, the trial judge made the following findings of fact:

2. That the defendant was advised of his constitutional rights, to-wit: that he had the right to remain silent, that anything . . . he said could be used against him in a court of law; that he had a right to have an attorney; that he had a right to have an attorney present during questioning; that if he could not afford an attorney, an attorney would be appointed to represent him at no expense; if he decided to answer questions that he could stop answering questions at any time.

3. That the defendant was asked if he understood the rights read to him by Agent Inscoe and the defendant replied that he did understand his rights.

4. That he was asked if he wanted a lawyer present during questioning; that he stated that he did not want a lawyer during questioning; that the defendant at the time of the interrogation was twenty-one years of age and informed . . . Agent Inscoe that he was able to read.

5. That the defendant was not suffering from any physical abnormality at the time of the interrogation and was sober.

6. That the defendant did not exhibit any of the traits of mental confusion of being incoherent or complained [sic] of any physical malady and presented an air of understanding to Agent Inscoe.

7. That Agent Inscoe made no promises, offers of reward or inducement to the defendant to get him to make a statement.

8. That no threats or suggestions of violence were made against the defendant; that the defendant at no time indicated he desired to stop talking or answering questions; that the defendant did make an oral waiver of his right to an attorney to be present during questioning.

Based upon these findings of fact, the trial court concluded that no constitutional rights of defendant were violated. We agree.

We have rejected the use of any *per se* rule in resolving issues surrounding the voluntariness and admissibility of confessions by defendants. *State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984). Rather, we look to the totality of the circumstances to determine whether a confession was in fact voluntarily and understandingly made. The test is whether the confession at issue was the product of "improperly induced hope or fear." *Id.* at 48, 311 S.E. 2d at 545.

In the case *sub judice*, there is nothing to suggest that there were any actions on the part of the investigating officer that would provoke fright in the defendant and overbear his will. Nor was there any indication that his statements were the product of threats or promises of reward.

Defendant argues that this Court has held confessions similarly induced to be involuntary. Defendant cites *State v. Livingston*, 202 N.C. 809, 164 S.E. 337 (1932) (officers told defendant that it looked like defendant "had about as well tell it"); *State v. Davis*, 125 N.C. 612, 34 S.E. 198 (1899) (the investigating officer stated that he had worked up the case and that defendant "had as well tell all about it"); *State v. Whitfield*, 70 N.C. 356 (1874) (defendant's employer stated to defendant that he believed defendant was guilty, and if defendant was guilty he "had better say so"). However, the circumstances under which these statements were made are vastly different from the present case.

In *Whitfield*, decided in 1874, this Court held defendant's confession of larceny to be involuntary. There, the black defendant was confronted by his white employer, escorted by white law enforcement officers, and accused of stealing hogs. The confession was held involuntary not merely because of the single statement that elicited the confession, but because of the coercive circumstances resulting from racial tension manifest in the confrontation. *State v. Whitfield*, 70 N.C. at 357. Similarly, in *Davis* the confession was involuntary not merely because of the statement made by officers that defendant had as well tell about the incident, but because defendant, interrogated in a post-arrest situation, was led to believe that his admission would mitigate punishment. *State v. Davis*, 125 N.C. at 614, 34 S.E. at 199. In *Livingston*, not only did the investigating officer state to defendant that he ought to tell what had occurred, he also told defendant that he would be "lighter" on defendant if he did confess. *State v. Livingston*, 202 N.C. at 810, 164 S.E. at 337. These cases reaffirm our view that the totality of the circumstances must be considered in determining the voluntariness of a confession. In each of the cases cited by defendant, it was the totality of the circumstances that dictated the result, not single remarks that served as improper inducements.

In the instant case, none of the improper inducements found in the cases cited by defendant were present. Moreover, and perhaps most importantly, defendant was made aware of his constitutional right to remain silent and to have an attorney present before questioning. He understood these rights and chose to speak. Viewing the totality of the circumstances surrounding defendant's statements, we find no evidence of coercion, and there-

fore find no error in the trial judge's decision to deny defendant's motion to suppress these statements. *See State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540.

[2]   Defendant next argues that the trial court abused its discretion by allowing leading questions to be asked of the prosecuting witness. He contends that the prosecutor was permitted to continue questioning the witness until she gave the desired answer that vaginal penetration had occurred. After reviewing the record, we find no abuse of discretion.

This Court has held that it is within the sound discretion of the trial judge to allow the use of leading questions on direct examination. *State v. See*, 301 N.C. 388, 271 S.E. 2d 282 (1980). We have allowed wide latitude in the questioning of a witness of tender years or when the subject concerns a delicate matter such as sexual conduct. *State v. Payne*, 280 N.C. 150, 185 S.E. 2d 116 (1971). Defendant apparently recognizes the discretion of the trial judge but argues that the rule ought not be limitless before an abuse of discretion is found. Our decision in this case does not allow trial judges to wield unbridled discretion and in no way depreciates the general rule prohibiting leading questions on direct examination.

The subject matter to which the nine-year-old witness was asked to testify was undoubtedly of a delicate nature. The substance of her testimony centered on whether defendant did penetrate her vaginally on the date in question. This situation was made more delicate by the fact that the child was having to testify against her older brother, not only in his presence but in the presence of many strangers. It is precisely this type of case that may require, in the trial judge's discretion, a certain degree of probing by the prosecutor and a certain latitude in questioning to allow for the full development of testimony. The trial judge's decision to allow this additional latitude to the prosecutor was not an abuse of discretion. There is nothing in the record to demonstrate that the prosecutor overstepped his bounds or badgered the young witness or succeeded in coercing her to say anything she was not prepared to say on her own. For these reasons, we find no abuse of discretion by the trial judge.

Last, defendant argues that the trial court erred in denying his motion to dismiss the charge of first degree rape. We find the evidence amply sufficient to support the charge.

No error.