STATE OF NORTH CAROLINA v. JUNIOR CHANDLER

No. 479A87

(Filed 2 March 1989)

1. **Constitutional Law § 65; Criminal Law § 40— fear by child witness—inability to communicate—unavailability—testimony at prior trial**

   The trial judge did not err in declaring a four-year-old witness unavailable so as to permit the introduction of a transcript of testimony given by the witness at a prior trial of defendant where the State made a good faith attempt to secure the witness for trial by producing the witness and attempting to elicit her testimony, and the trial judge found that the child was overcome with fear to the extent that she could not respond to questions. Medical testimony was not required for the court's conclusion of unavailability since the witness was not unavailable as the result of an existing medical condition,

and no explanation or verification of such a condition was necessary. N.C.G.S. § 8C-1, Rule 804(a)(4).

**2. Constitutional Law § 65; Criminal Law § 40— right of confrontation—prior testimony of unavailable witness**

Defendant's right of confrontation under the Sixth and Fourteenth Amendments was not violated by the admission of the transcript of an unavailable witness's testimony at a prior trial of defendant on the same charges where defendant was present and represented by counsel at the prior trial.

**3. Criminal Law §§ 89.2, 95— evidence competent for corroboration—limiting instruction not requested—admissibility as substantive evidence not determined**

Testimony by a social worker consisting of statements and drawings made by a child sexual offense victim was admissible to corroborate the child's testimony at trial, to corroborate a doctor's testimony concerning the physical evidence and the child's statements during medical diagnosis and treatment, and to corroborate testimony by an eyewitness. The appellate court was not required to determine whether the social worker's testimony was admissible as substantive evidence merely because no instruction limiting its use to corroboration was requested or given.

**4. Criminal Law § 15.1— change of venue for retrial—interest of justice—inherent power of court**

After a mistrial was declared for failure of the jury to reach a verdict in a case involving sexual offenses, indecent liberties and crime against nature, the trial court properly exercised its inherent power to order a change of venue in the interest of justice by granting the State's motion for change of venue of the retrial where the court found that every prospective juror at the first trial had heard of the case; many of the prospective jurors were related to defendant by blood or marriage; many of the prospective jurors knew and had worked with witnesses for both the State and defendant; a spectator had expressed her views to one of the jurors about the case; in a retrial in the same county, it would be difficult to seat twelve jurors who had not formed an opinion as to the guilt or innocence of defendant; it would be a hardship on the county sheriff to provide the security required at the retrial; it was impossible to separate spectators, witnesses, jurors, or families of defendant and the State's witnesses as they entered and left the courthouse; repairs to the roof of the courthouse resulted in a backlog of cases; retrial of the case in the same county would place an abnormal burden on the court system and the civil and criminal dockets; and the court was personally aware of rumors concerning weapons in the courtroom and contact with jury members.

**5. Constitutional Law § 56; Criminal Law § 15— trial by jury of vicinage—transfer of case to another county**

The transfer of defendant's retrial to a neighboring county did not violate defendant's right under the Sixth Amendment of the U. S. Constitution and Art. I, § 24 of the N. C. Constitution to be tried by a jury of the vicinage where it appeared necessary to the trial judge to move the case to another county in order to provide for a fair trial.

**6. Criminal Law § 92.4— sexual offenses, indecent liberties, and crimes against nature—consolidation for trial**

Indictments charging defendant with seven counts of first degree sexual offense, seven counts of taking indecent liberties with a minor, and seven counts of crime against nature were properly consolidated for trial under N.C.G.S. § 15A-926(a) (1988) where all the crimes were committed while the child victims were in the exclusive care of defendant when he was transporting them to and from a day care center, and defendant's conduct manifests a common scheme or plan to gratify his sexual desire on the bodies of young children who were in his care.

**7. Criminal Law § 92.5— charges involving seven children—refusal to sever—absence of prejudice**

There was no merit to defendant's contention that he was unfairly prejudiced by the trial court's refusal to sever cases involving various sexual offenses against seven different children over a four and one-half month period of time on the ground that the jury would believe he was guilty of all offenses simply because there were so many since the State could still have presented evidence of other similar sex crimes as evidence of a common scheme or plan even if the cases were tried separately. N.C.G.S. § 8C-1, Rule 404(b) (1988).

**8. Rape and Allied Offenses § 4— sexual offenses against children—social worker's use of anatomical dolls—admissibility for corroboration**

A social worker's testimony concerning her use of anatomical dolls during interviews with children who allegedly were sexually abused by defendant was admissible to illustrate the social worker's testimony as to the manner in which the children communicated to her the accounts of sexual abuse and to corroborate the testimony of each child.

**9. Criminal Law § 87.1— leading questions—child sexual offense victims**

The trial court did not err in permitting the State to ask leading questions of children whose ages ranged from two to five years during their testimony about alleged sexual offenses.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing consecutive sentences of life imprisonment entered by *Albright, J.,* at the 30 March 1987 Criminal Session of Superior Court, BUNCOMBE County, upon jury verdicts of guilty of five counts of first degree sexual offense in violation of N.C.G.S. § 14-27.4. Defendant also appeals from judgments sentencing him to a term of years upon his convictions of six counts of taking indecent liberties with a minor, in violation of N.C.G.S. § 14-202.1, and one count of crime against nature, in violation of N.C.G.S. § 14-177. Defendant's motion to bypass the Court of Appeals on the lesser offenses was allowed on 9 September 1987. Heard in the Supreme Court 13 September 1988.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Robert G. Karriker and Talmage N. Penland for defendant-appellant.*

FRYE, Justice.

Defendant was originally charged in seven bills of indictment with first degree sexual offense against seven children under the age of thirteen years. The State submitted superseding indictments on 20 October 1986 which were returned as true bills by the Madison County Grand Jury charging defendant with seven counts of first degree sexual offense, seven counts of taking indecent liberties with a minor and seven counts of crime against nature. All twenty-one counts were consolidated for trial.

Defendant's first jury trial commenced at the 19 January 1987 Criminal Session of Superior Court, Madison County, Judge James A. Beaty, Jr., presiding. On 2 February 1987, Judge Beaty declared a mistrial because the jury was unable to reach a unanimous verdict. On 13 February 1987, at a Special Session of Madison County Superior Court, Judge Beaty granted the State's Motion for Change of Venue pursuant to N.C.G.S. § 15A-957 and ordered the cases transferred to Buncombe County for trial. The second jury trial commenced at the 30 March 1987 Criminal Session of Buncombe County Superior Court with Judge W. Douglas Albright presiding.

Evidence for the State tended to show that defendant was employed from 1 January to 19 May 1986 by the Madison County Transportation Authority as a driver of a day care van. During the period of January through May 1986, Brandy, Michelle, Quantella, Amanda, Brian, Timmy and Jessica attended the Marshall Day Care Center and rode the van driven by defendant. The ages of the children ranged from two to five years.

Defendant also transported mentally handicapped adult residents of the Mintz Family Care Homes to and from the Madison Sheltered Workshop along with the children attending the Marshall Day Care Center. Defendant picked up the mentally retarded adults from the Sheltered Workshop at 2 p.m. each afternoon,

and arrived at the Marshall Day Care Center between 2:15 p.m. and 2:30 p.m.

Brandy lived within three miles of the day care center and her residence was one of the first stops made by defendant after leaving the center. When she began riding the van, Brandy arrived home around 2:45 p.m. but, after riding the van for a few months, she gradually arrived home later each day. On 24 February 1986, Brandy rode the van home from the day care center. She told her mother, Nancy Burgess, "We've been f - - - - - - ." Brandy's mother punished her for using vulgar language, and removed her from the day care center. The child's genital area, which had been red and irritated during the time she rode the van, cleared up and was no longer red. A few weeks later, Mrs. Burgess saw Brandy simulate sexual acts with her teddy bear.

On or about 17 May 1986, Brandy told her mother how "they" had "hurt her butt" on the day care van and threatened to put the kids on the railroad tracks if they told. Subsequently, Brandy was interviewed by Linda King, a social worker with the Madison County Department of Social Services, who made an appointment for a medical examination for Brandy. Dr. Nancy Rice, a child medical examiner, examined Brandy and found a "markedly dilated" vaginal opening. She testified that normally in a little girl the vaginal opening is closed like a flat line and that Brandy's was "gaping" to the point where Dr. Rice could easily have inserted two fingers in the child's vaginal opening.

Based on Brandy's statements to Linda King which indicated that the other children had been abused, the social worker contacted the families of the children and set up interviews and medical appointments for the children. Dr. Rice examined Brandy, Quantella, Amanda and Michelle and testified at trial that she found that each of the little girls had "markedly dilated vaginal openings, wider than normal for girls their age."

On 26 May 1986, Linda King interviewed Brian who told her that defendant had "placed a pen in his butt" and defendant had placed his hand on Brian's penis. On 28 May 1986, Dr. Gravatt interviewed Timmy who told her [] "Hurt my pee-pee. Touched my butt." Dr. Gravatt examined Jessica on 29 May 1986 and diagnosed Jessica's condition as "suspicious for child abuse." On 29 May 1986, Dr. Rice and Dr. Gravatt separately examined Brandy,

Quantella, Amanda and Michelle. Each of these girls related to the doctors that defendant had penetrated them sexually.

On 29 May 1986, after the medical examinations, Linda King took Brandy, Michelle, Amanda and Quantella to the Redmon Dam area of Madison County where the children directed her to the locations where the events occurred. In their statements to the doctors and the social worker, the children mentioned the mentally retarded adults as being involved in the sexual assaults. SBI Special Agent Lloyd Crisco talked to Pam Coli and Buddy Norton, two of the retarded adults who rode the van. Both independently corroborated the children's statements concerning the abuse and the locations where the incidents of abuse occurred.

At trial, Brandy, Brian, Amanda and Quantella each testified that defendant had touched them in their private parts or penetrated them sexually. Michelle was declared unavailable and her former testimony from the first trial was admitted as substantive evidence. Dr. Gravatt testified that she had examined all seven children and found markedly dilated vaginas in Brandy, Quantella, Amanda and Michelle, and redness in the vaginal area of Jessica. All seven children had described to her how they were sexually penetrated by defendant. Dr. Rice corroborated the medical findings of Dr. Gravatt and testified that she had referred the children to therapy.

Brandy, Brian, Quantella, and Amanda were referred to therapist Phyllis Wells. She testified that each of the four children exhibited behavior which was consistent with that of a sexually abused child. Becky Lasher was the therapist for Michelle and Jessica. Michelle's statement to Ms. Lasher during therapy that defendant had "messed with her butt" and drawings of defendant made by Michelle during therapy were introduced into evidence.

Defendant denied having molested the children, and testified that he never stopped the day care van anywhere around Redmon Dam. Two workers at the Carolina Power and Light Power Plant at the Redmon Dam testified that they had seen the yellow van parked in the road going into the power plant in the same area earlier witnesses had indicated on photographs.

The jury convicted defendant of five counts of first degree sexual offense, six counts of taking indecent liberties with a minor and one count of crime against nature. On 15 April 1987, Judge Albright consolidated three counts of first degree sexual offense for a sentence of life imprisonment; consolidated two counts of first degree sexual offense for an additional sentence of life imprisonment, to be served after the first life sentence; and imposed consecutive sentences of three years for each charge of crime against nature and taking indecent liberties with a minor, for a total of twenty-one years to be served concurrently with the life sentences.

Defendant appeals from the 15 April 1987 judgments, assigning error to one hundred fifty-two (152) rulings of the two trial judges. These assignments of error are brought forward in seven numbered arguments, the first of which is divided into two parts. We shall consider the arguments seriatim.

[1] Defendant first contends that the trial court erred by allowing Michelle Chandler, a key witness for the State, to be withdrawn as a witness and by admitting her testimony from the first trial into evidence. Defendant contends the admission of the former testimony violated his sixth amendment right of confrontation. We find no error in the ruling of the trial court and we hold that defendant's right of confrontation was not violated by the admission of the former testimony.

During the presentation of the State's case, the district attorney called one of the victims, Michelle Chandler, four years of age, as a witness. After the child failed to respond to several questions, the trial judge noted that she appeared to be overcome with fear to the extent that she could not communicate. The court allowed the witness's mother to come to the stand to sit with her. The witness answered several introductory questions but failed to respond to further questioning. The trial judge directed the witness to be withdrawn because of her inability to respond to questions, noting that he did not find her to be an incompetent witness. He later permitted the State to introduce into evidence the transcript of the child's testimony from the first trial.

The sixth amendment to the United States Constitution guarantees an accused the right to confront and cross-examine the witnesses against him. *Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d

597 (1980); *California v. Green*, 399 U.S. 149, 26 L.Ed. 2d 489 (1970). The sixth amendment right of confrontation is made applicable to the states through the due process clause of the fourteenth amendment, *Pointer v. Texas*, 380 U.S. 400, 13 L.Ed. 2d 923 (1965). A similar guarantee is included in the North Carolina Constitution in article I, section 23.

An exception to the confrontation requirement will be recognized where a witness is unavailable to testify but has testified at a former proceeding subject to cross-examination. *Barber v. Page*, 390 U.S. 719, 722, 20 L.Ed. 2d 255, 258 (1968); *Mattox v. United States*, 156 U.S. 237, 39 L.Ed. 409 (1895); *State v. Grier*, 314 N.C. 59, 331 S.E. 2d 669 (1985); *State v. Prince*, 270 N.C. 769, 154 S.E. 2d 897 (1967). In North Carolina, a trial judge may declare a witness unavailable pursuant to N.C.G.S. § 8C-1, Rule 804(a)(4) which states:

(a) Definition of unavailability.—Unavailability as a witness includes situations in which the declarant:

. . . .

(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or . . . .

N.C.G.S. § 8C-1, Rule 804(a)(4) (1986).

Defendant contends that the trial judge erred in admitting the witness's testimony from the prior trial because a determination of unavailability under Rule 804(a)(4) in a criminal case must be supported by medical evidence. Defendant cites several civil cases in which courts of other jurisdictions have required that expert medical testimony support a finding that a witness is unavailable. However, those cases may be distinguished factually on the basis that the witnesses in all of those cases suffered from existing medical conditions which rendered them unavailable for trial and required medical treatment. *See, e.g., Norburn v. Mackie*, 264 N.C. 479, 141 S.E. 2d 877 (1965) (affidavit of doctor submitted stating that witness had recently undergone surgery); *United States v. Keithan*, 751 F. 2d 9 (C.A. Mass. 1984) (eighty-seven-year-old witness with a severe back condition and eighty-three-year-old witness with a heart condition); *People v. Gomez*, 103 Cal. Rptr. 80, 26 C.A. 3d 225 (Cal. App. 1972) (child victim of

sexual assault in state mental hospital and subject to severe mental health problems if forced to testify); *Peterson v. United States*, 344 F. 2d 419 (5th Cir. 1965) (witness unavailable to testify for five to seven months due to complications of pregnancy).

Generally, a witness is unavailable for purposes of the exception to the confrontation requirement when "the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25, 20 L.Ed. 2d 255, 260; *Ohio v. Roberts*, 448 U.S. 56, 74, 65 L.Ed. 2d 597, 613; *State v. Grier*, 314 N.C. at 65, 331 S.E. 2d at 673. At least one other jurisdiction considering the issue in a case somewhat similar to the instant case has concluded that expert medical testimony is not essential to a determination of unavailability and that the definition of unavailability does not require a showing that the witness is permanently disabled from testifying. *See State v. Drusch*, 139 Wis. 2d 312, 407 N.W. 2d 328, *disc. rev. denied*, 140 Wis. 2d 874, 416 N.W. 2d 66 (1987) (no abuse of discretion where trial judge determined, in the absence of medical testimony, that the eight-year-old child witness was unavailable due to the child's tender years and emotional condition). The general rule in North Carolina regarding the standard for determining the competency of a witness to testify requires only that the trial judge rely on his personal observation of the witness's demeanor and responses to questions on voir dire. *State v. Fearing*, 315 N.C. 167, 337 S.E. 2d 551 (1985).

Prior to permitting the child's testimony from the former trial to be introduced, the trial judge agonized over the dilemma presented by the child's inability to testify. When the child gave no response after numerous questions from the prosecutor, the judge responded as follows:

COURT: I don't believe any further questions would serve any useful purpose. This child is utterly terrified. I've watched her carefully. I've seen her hands tremble and her throat quiver; I've seen the look of fear cover her eyes. On occasion, she's looked at the defendant and dropped her head and lowered her eyes, and I've observed her little legs up here shaking. And although her mother's presence initially calmed her somewhat, whatever information she may possess just is frozen by fear and will not come out, and I don't know

of any point in traumatizing her further at this point, at least. I'm unable to admit her as a competent witness. It appears to me—it simply appears to me that this child, in a very hostile and alien environment for a small child of tender years, is overcome by fear and frozen by fear, and is simply going to be unable to testify, and I suggest that you withdraw her.

Under the circumstances, the judge's declaration that the child "is simply going to be unable to testify," amounts to an implicit declaration of unavailability within the meaning of Rule 804(a)(4). Medical testimony was not required for this conclusion since the witness was not unavailable as the result of an existing medical condition and an explanation or verification of such a condition was unnecessary. The trial judge had the opportunity to observe the demeanor of the witness and her inability to respond to questions. The State fulfilled the constitutional requirement of the confrontation clause by showing a good-faith attempt to secure the witness for trial since the State produced the witness and attempted to elicit her testimony.

[2] It is also well established that when a witness has been declared unavailable, the testimony of that witness at a former trial of the same cause is admissible as substantive evidence. *Barber v. Page*, 390 U.S. 719, 722, 20 L.Ed. 2d 255, 258; *Mattox v. United States*, 156 U.S. 237, 39 L.Ed. 409; *State v. Prince*, 270 N.C. 769, 154 S.E. 2d 897; N.C.G.S. 8C-1, Rule 804(b)(1) (1986). Testimony taken at a prior proceeding is admissible when (1) the witness is unavailable; (2) the proceeding at which the former testimony was given was a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and subject matter at which the testimony is directed; and (3) the current defendant was present at the former proceeding and was represented by counsel. *State v. Grier*, 314 N.C. at 65, 331 S.E. 2d at 673.

Portions of Michelle Chandler's testimony at the 19 January 1987 trial were read into evidence at the 30 March 1987 trial. Defendant was present and represented by counsel at both trials. Since the trial court correctly concluded that the witness was unavailable, the former testimony was also properly admitted under the foregoing principles.

[3]   In the second part of defendant's first argument, he contends that the trial court erred by admitting the testimony of Becky Lasher, a social worker, which consisted of statements and drawings made by Michelle during therapy sessions. We do not attempt to determine whether the testimony was admissible as substantive evidence under an exception to the rule against hearsay. However, the evidence was admissible as corroboration of the child's testimony at the first trial. It was also admissible to corroborate the testimony of Dr. Gravatt concerning the physical evidence and statements of Michelle made during medical diagnosis and treatment. It also tended to corroborate the testimony of Pam Coli, an eyewitness.

This Court is not required, as defendant suggests, to focus its attention on deciding whether the testimony of Ms. Lasher was admissible as substantive evidence merely because no instruction limiting its use to corroboration was given or requested. The admission of evidence, competent for a restricted purpose, will not be held error in the absence of a request by defendant for a limiting instruction. *State v. Jones*, 322 N.C. 406, 414, 368 S.E. 2d 844, 848 (1988). Such an instruction is not required to be given unless specifically requested by counsel. *State v. Smith*, 315 N.C. 76, 82, 337 S.E. 2d 833, 838 (1985). Since defendant made no request for a limiting instruction, we find no error in the admission of Ms. Lasher's testimony which was competent and admissible for corroborative purposes.

In defendant's second and third arguments, he contends that the trial court erred "by violating the constitutional and common law rights of defendant to a trial by a jury from the area wherein the alleged crimes occurred," and "by violating the statutory right of defendant to venue being laid in the county wherein the alleged crimes occurred."

[4]   We first consider defendant's contention that the trial court violated his statutory right to venue being laid in the county wherein the alleged crime occurred. The State originally brought defendant to trial in Madison County. A mistrial was declared after the jury was unable to reach a unanimous verdict. After the judge entered the order declaring a mistrial, the State made a motion for a change of venue for the retrial from Madison County

to Buncombe County. The judge subsequently granted the State's motion for change of venue.

Generally, venue lies in the county where the charged offense occurred. N.C.G.S. § 15A-131(c) (1988). A defendant may move for change of venue for prejudice. N.C.G.S. § 15A-957 (1988). The court has the statutory authority to order a special venire from another county to insure a fair trial. N.C.G.S. § 15A-958 (1988). These statutory limitations on the power of a court to order a change of venue are preempted by the inherent authority of the superior court to order a change of venue in the interest of justice. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, *reh'g denied*, 448 U.S. 918 (1980). Furthermore, a motion for change of venue is addressed to the sound discretion of the trial judge and his ruling thereon will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Id.* at 320, 259 S.E. 2d at 524. In the instant case the State relies on this inherent authority of the court as the basis for the judge's order changing venue.

In *English v. Brigman*, 227 N.C. 260, 41 S.E. 2d 732 (1947), a superior court judge moved the trial on his own motion after finding a fair and impartial trial could not be held in Haywood County. This Court held that a superior court judge on his own motion, in his own discretion and in the furtherance of justice, has the authority to transfer a case from one county to another. "Such power existed at common law, and, therefore, unless specifically denied by statute, still adheres in the courts of the country." *Id.* at 261, 41 S.E. 2d at 732.

In *Barfield*, 298 N.C. 306, 259 S.E. 2d 510, a death case, the defendant originally moved for and obtained a change of venue from Robeson County for reasons of extensive pretrial publicity. The trial judge transferred the case to Scotland County. Subsequently, the district attorney moved that the case be transferred from Scotland County to Bladen County because of the limited number of court sessions in Scotland County and the number of persons awaiting trial there. Although the statutory power to change venue limited the location of the changed venue and provided only for the defendant to be the moving party, this Court upheld the trial judge's transfer of the case from Scotland to Bladen County on the State's motion. The authority for moving

the case was the inherent authority of the court. This Court found no abuse of discretion.

Defendant calls our attention to the rights of citizens of the county to try their own as enunciated in *State v. Vereen,* 312 N.C. 499, 324 S.E. 2d 250 (1985). Both the defendant's right to be tried in the place of the crime and the citizens' rights to see justice done in their own community are important considerations. However, "[t]he legitimate concern of county residents in trying criminal defendants locally is not . . . the test for determining whether venue should be changed." *State v. Jerrett,* 309 N.C. 239, 254, 307 S.E. 2d 339, 347 (1983). A judge has a duty to order a change of venue where, due to the totality of the circumstances, a fair and impartial trial cannot be had in the county of the indictment. *Id.* at 258, 307 S.E. 2d at 349.

In the instant case, the order changing venue contained findings of fact. Defendant did not object to these findings which established that: during jury selection at the first trial every prospective juror indicated having heard of the case; many of the prospective jurors were related to defendant by blood or marriage; many of the prospective jurors knew and had worked with witnesses for both the State and defendant; one juror who was seated became ill and had to see his doctor—one of defendant's chief witnesses; a spectator told the court she had talked to one of the jurors about the case and had expressed her views to him; it was difficult to seat twelve jurors at retrial of this case in Madison County who had not formed an opinion as to the guilt or innocence of defendant; it would have been a hardship on the county sheriff to provide the security required at the retrial; it was impossible to separate spectators, witnesses, jurors, or families of defendant and the State's witnesses as they entered and left the courthouse; while the case was being tried, no district court could be held in the superior courtroom; repairs to the roof of the courthouse resulted in a backlog of cases; retrial of this case in Madison County would place an abnormal burden on the court system, the civil and criminal dockets, and the sheriff's department of Madison County; and, the court was "personally aware of the allegations of rumors of weapons in the courtroom, allegations of rumors of contact with various members of the jury panel, and contact with the jury that was actually seated."

After making these findings, Judge Beaty concluded that the totality of the circumstances justified transferring venue in the best interest of justice. We believe that these findings clearly support Judge Beaty's conclusion and the resulting order granting the State's motion to change the venue from Madison County. We find no abuse of discretion in his order granting the change of venue.

[5] Nevertheless, defendant contends that the sixth amendment to the United States Constitution[1] and article I, section 24 of the North Carolina Constitution[2] give him the right to be tried by a jury of the vicinage, which he asserts to be Madison County. Section 24 of article I of the North Carolina Constitution is an embodiment of the common law right to a trial by a jury from the vicinage or the neighborhood within which the crime was allegedly committed, and violation of this right is considered violation of a constitutional right, defendant contends. Assuming, *arguendo,* the correctness of defendant's contentions, the North Carolina cases cited to support the contentions also supply the answers to them in this case. In *State v. Cutshall,* 110 N.C. 538, 15 S.E. 261 (1892), this Court interpreted section 13, now section 24 of article I of the North Carolina Constitution, as follows:

> Not only has section 13 been construed to guarantee to every person . . . a trial by jury in all cases, which were so triable at common law . . . but a trial by his peers of the vicinage, <u>unless, after indictment, it should appear to the judge necessary to remove the case to some neighboring county in order to secure a fair trial.</u>

*Id.* at 543-44, 15 S.E. at 262 (emphasis added). As the underlined portion of the opinion discloses, the right to be tried by one's peers of the vicinage is subject to the ability to secure a fair trial. Both defendant and the State are entitled to a fair trial and a fair

---

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI.

2. "No person shall be convicted of any crime but by the unanimous verdict of a jury in open court. The General Assembly may, however, provide for other means of trial for misdemeanors, with the right of appeal for trial de novo." N.C. Const. art. I, § 24.

trial requires an impartial jury. As amply demonstrated by the trial judge's findings, it appeared necessary to Judge Beaty in this case "to remove the case to some neighboring county in order to secure a fair trial." Thus, the removal of the cases to Buncombe, a neighboring county, does not violate the constitutional prohibition.

Defendant cites *State v. Vereen*, 312 N.C. 499, 324 S.E. 2d 250, for the purpose of showing that "county residents have a significant interest in seeing criminals who commit local crimes being brought to justice. For this reason, only in rare cases should a trial be held in a county different from the one in which the crime was allegedly committed." *Id.* at 511, 324 S.E. 2d at 258. We agree. This is one of those rare cases as shown by the findings of fact in the order transferring this case from Madison County to Buncombe County for trial. We find no violation of defendant's sixth amendment rights and no violation of his rights under article I, section 24 of the North Carolina Constitution.

In defendant's fourth and fifth arguments he contends that the trial court erred (1) in granting the State's motion to consolidate the offenses for trial, and (2) in denying defendant's motion to sever, made prior to trial and again at the close of the State's evidence. Consolidation of the offenses for trial is controlled by statute:

> Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.

N.C.G.S. § 15A-926(a) (1988).

[6] The State's written motion for consolidation set forth the names and ages of the alleged victims, the crimes charged and dates of the alleged offenses, together with allegations that the crimes were all part of a series of transactions pursuant to a scheme or plan of the defendant to gratify his sexual desires on the bodies of the young children in his care as driver of the Madison County Transportation Authority van. The motion also indicated that because of the young ages of the children, the State was unable to prove the exact dates and times the crimes

occurred, but would be able to prove the crimes occurred between 1 January and 19 May 1986. Judge Beaty allowed the motion to consolidate prior to the first trial, and Judge Albright allowed the motion prior to the second trial.

Public policy favors consolidation because it expedites the administration of justice, reduces congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries and avoids the necessity of recalling witnesses who will be called upon to testify only once if the cases are consolidated. *State v. Boykin*, 307 N.C. 87, 296 S.E. 2d 258 (1982). The decision of whether to consolidate or sever cases for trial is within the discretion of the trial judge and will not be disturbed absent a showing of abuse of discretion. *State v. Silva*, 304 N.C. 122, 282 S.E. 2d 449 (1981). We find no abuse of discretion in the instant case. All the crimes were committed while the children were in the exclusive care of defendant while he was transporting them from their homes to the day care center and returning them home in the afternoon. Defendant's conduct manifests a common scheme or plan of defendant and it appears that the cases were properly joined under the statute.

[7] Nevertheless, defendant contends that the trial court committed error by denying his motions to sever made prior to trial and again at the close of the State's evidence. Defendant contends that the consolidation of the offenses resulted in unfair prejudice to him since the offenses involved seven different children and a four and one-half month period of time, making it difficult to defend the case since the jury would believe he was guilty of all offenses because there were so many.

Severance of offenses is governed by N.C.G.S. § 15A-927(b) (1988). Whether defendant's motion is made before trial or during the trial, the court must grant a severance of offenses if "it is found necessary to achieve a fair determination of the defendant's guilt or innocence of each offense." *Id.* If the motion for severance is made during the trial, "[t]he court must consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." N.C.G.S. § 15A-927(b)(2) (1988). On a motion to sever, the question before the trial court is:

[W]hether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial. Whether offenses should be joined is a matter addressed to the sound discretion of the trial judge. His ruling will be overturned only upon a showing that he abused his discretion. (Citations omitted.)

*State v. Bracey*, 303 N.C. 112, 117, 277 S.E. 2d 390, 394 (1981).

In *State v. Street*, 45 N.C. App. 1, 262 S.E. 2d 365, *cert. denied*, 301 N.C. 104, 273 S.E. 2d 311 (1980), the court held consolidation was proper where children were molested in defendant's home over a five-month period. In *Street*, the Court of Appeals relied on the test for severance as stated in *State v. Johnson*, 280 N.C. 700, 704, 187 S.E. 2d 98, 101 (1972), which is "whether the offenses are so separate in time or place and so distinct in circumstances as to render a consolidation unjust and prejudicial to defendant." To the same effect, *see State v. Effler*, 309 N.C. 742, 752, 309 S.E. 2d 203, 209 (1983) (joinder of two cases of sex crimes against different children on 15 May and 8 June 1982 upheld as not being "so separate in time or place or so distinct in circumstance that consolidation unjustly or prejudicially hindered or deprived defendant of his ability to defend one or the other of the charges").

Defendant contends that failure to sever the cases for trial unfairly prejudiced him because consolidation made it difficult to defend the case and tended to make the jury believe he was guilty of all offenses simply because there were so many. This contention has no merit because if the cases were tried separately the State could still have presented evidence of other similar sex crimes as evidence of a common scheme or plan. N.C.G.S. § 8C-1, Rule 404(b) (1988). *See also State v. Gordon*, 316 N.C. 497, 342 S.E. 2d 509 (1986); *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986); *State v. Craven*, 312 N.C. 580, 324 S.E. 2d 599 (1985); *State v. Arnold*, 314 N.C. 30, 333 S.E. 2d 34 (1985). We hold, therefore, that defendant has failed to show any prejudice, or an abuse of discretion by the trial judge.

[8] Defendant's sixth argument is that the trial court erred by allowing Linda King to testify concerning her use of anatomical dolls during interviews with the children. Drs. Rice and Gravatt testified with respect to the use of anatomical dolls and this testi-

mony was admitted into evidence under N.C.G.S. § 8C-1, Rule 803(4) as statements made for diagnosis and treatment. Defendant argues that Ms. King's testimony was neither corroborative of the two doctors' testimony, since their testimony was purely for diagnosis and treatment, nor was it corroborative of the children's testimony because their testimony did not concern the use of the anatomical dolls.

The courts of this State have allowed the use of anatomical dolls in sexual abuse cases to illustrate the testimony of child witnesses. "The practice is wholly consistent with existing rules governing the use of photographs and other items to illustrate testimony. It conveys the information sought to be elicited, while it permits the child to use a familiar item, thereby making him more comfortable." *State v. Fletcher*, 322 N.C. 415, 421, 368 S.E. 2d 633, 637 (1988). *See State v. Watkins*, 318 N.C. 498, 349 S.E. 2d 564 (1986); *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350; *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833. Any party may introduce evidence for the purpose of illustrating the testimony of a witness. *See* N.C.G.S. § 8-97 (1986 & Cum. Supp. 1988); 1 Brandis, North Carolina Evidence § 34 (3d rev. ed. 1988). "Slight variations between the corroborating statement and the witness' testimony will not render the statement inadmissible." *State v. Riddle*, 316 N.C. 152, 157, 340 S.E. 2d 75, 78 (1986).

Even though the dolls were used in the instant case to illustrate the testimony of the social worker rather than the abused children, the evidence was still admissible. The demonstration illustrated the social worker's testimony as to the manner in which the children communicated, during the interviews, the accounts of sexual abuse. The social worker's demonstration of what she observed each child do with the dolls also corroborated the testimony of each child. We find no error in admitting this evidence.

[9] In defendant's seventh and final argument he contends that the trial court abused its discretion by allowing the State to use leading questions in examining child witnesses and to ask questions suggestive of facts not yet in evidence. Defendant asserts that leading questions are permitted only when the witness has difficulty understanding the question. Prior to questioning, the trial court found that each child was competent and capable as a

witness. Thus, defendant contends, there was no basis for leading questions. We do not agree.

It is within the sound discretion of the trial judge to allow leading questions on direct examination, and in cases involving children or an inquiry into delicate subjects such as sexual matters, the judge is accorded wide latitude to exercise that discretion. *State v. Wilson*, 322 N.C. 91, 96, 366 S.E. 2d 701, 704 (1988). *See State v. Williams*, 303 N.C. 507, 279 S.E. 2d 592 (1981); *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). The children in the instant case were extremely young; their ages ranged from two to five years. Additionally, the children were required to testify about sexual matters which, for young children, are presumably difficult to understand or communicate without assistance. Leading questions were necessary in order to elicit from them details of alleged offenses. We find no abuse of discretion.

We conclude that defendant has had a fair trial, free of prejudicial error. His convictions, and the sentences entered thereon, remain undisturbed.

No error.