STATE OF NORTH CAROLINA v. CARLOS LAMONT CARMON

No. COA04-130

(Filed 19 April 2005)

## 1. Confessions and Incriminating Statements— postarrest statements—custodial interrogation—Miranda rights

The trial court did not err in a felonious breaking or entering, robbery with a dangerous weapon, and misdemeanor assault inflicting serious injury case by denying defendant's motion to suppress his postarrest statements even though defendant contends law enforcement officers subjected him to a custodial interrogation without advising him of his Miranda rights, because the trial court's findings of fact supported its conclusion of law that none of defendant's constitutional rights were violated by his detention and interrogation.

## 2. Jury— special venire panel—pretrial publicity

The trial court did not abuse its discretion in a felonious breaking or entering, robbery with a dangerous weapon, and misdemeanor assault inflicting serious injury case by ordering a special venire panel from another county for defendant's third trial, because: (1) a reasonable likelihood existed that prejudicial pretrial publicity would prevent a fair trial the third time based on the small population of the pertinent county and the massive publicity surrounding defendant's two previous mistrials; and (2) the judge who heard the State's motion for change of venue was the same judge who presided over defendant's second trial where he heard testimony that the victim and her husband owned a minimart frequented by many residents of the community.

## 3. Jury— peremptory challenges—*Batson* claim

The trial court did not err in a felonious breaking or entering, robbery with a dangerous weapon, and misdemeanor assault inflicting serious injury case by denying defendant's objection to the State's use of peremptory challenges to remove African-American jurors from the panel allegedly based on race, because: (1) defendant failed to establish a prima facie showing of purposeful discrimination and the State offered race neutral explanations for each peremptory challenge; and (2) three of the prospective jurors were challenged on the basis that they did not disclose prior criminal convictions or pending charges when

asked specifically to do so, the fourth prospective juror had just been released from prison, and the fifth prospective juror had a son with a criminal conviction.

### 4. Appeal and Error— preservation of issues—constitutional questions—evidence rules

Defendant did not preserve for appellate review the issue as to whether the victim's testimony about her perceptions of in-court demonstrations of defendant's placing a stocking over his face in defendant's two previous trials which ended in mistrials violated defendant's federal and state constitutional rights and certain rules of evidence where defendant did not apprise the trial court that he was raising constitutional issues by his objections to the victim's testimony, and defendant's brief discusses none of the rules of evidence allegedly violated.

### 5. Criminal Law— trial court questioning witnesses—clarification

The trial court did not err in a felonious breaking or entering, robbery with a dangerous weapon, and misdemeanor assault inflicting serious injury case by asking questions of witnesses, because: (1) defendant concedes the trial court has authority to question a witness under N.C.G.S. § 8C-1, Rule 614; (2) the trial court's questions did not exceed the boundaries of clarification; and (3) defendant failed to establish that any of the trial court's questions were prejudicial.

### 6. Evidence— testimony—credibility of alleged accomplice

The trial court did not err in a felonious breaking or entering, robbery with a dangerous weapon, and misdemeanor assault inflicting serious injury case by overruling defendant's objection to the admission of testimony of a police captain regarding the credibility of an alleged accomplice, because: (1) defendant's pre-trial statement to police implicated a person as an accomplice in the crime; and (2) the captain's testimony regarding his impression of that person's denial of involvement was admissible not as to the alleged accomplice's general credibility and character, but rather as an explanation for why that person was not arrested.

### 7. Evidence— hearsay—substantially same testimony admitted without objection—harmless error

The trial court did not err in a felonious breaking or entering, robbery with a dangerous weapon, and misdemeanor assault

inflicting serious injury case by admitting hearsay testimony from an officer serving as a State's witness, because: (1) where hearsay testimony is admitted over objection but nearly identical testimony is admitted without an objection, the erroneous admission is rendered harmless; and (2) although defendant did object to the pertinent hearsay testimony, defendant elicited the same testimony during cross-examination of the officer and thus cannot now complain that the earlier admission of the nearly identical testimony was prejudicial.

Appeal by defendant from judgments entered 22 May 2003 by Judge Cy Grant in Greene County Superior Court. Heard in the Court of Appeals 30 November 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Richard J. Votta, for the State.*

*Bowen, Berry and Powers, P.L.L.C., by Sue Genrich Berry, for defendant-appellant.*

ELMORE, Judge.

Carlos Lamont Carmon (defendant) was convicted of felonious breaking and/or entering, robbery with a dangerous weapon, and misdemeanor assault inflicting serious injury and now appeals the judgment entered against him. The State's evidence tended to show that on the morning of 26 October 2001, a masked man broke into the home of Cornelia Murphrey (the victim). The man tore the kitchen door from its frame and entered the victim's home between 9:30 and 9:45 a.m., demanded money from the victim, beat her at knife point, dragged her through the home, and threatened to kill her. The man took $100.00 out of a burgundy bag the victim kept in the kitchen and tied the victim's hands and feet behind her back with part of a vacuum cord. The victim was able to get her hands free while the assailant was in another part of the house, then the victim crawled across the kitchen floor and called her husband at work. Although her husband was not able to understand the caller was his wife and hung up the phone, the victim was able to re-dial the store, and a female employee answered. The victim told the employee what was happening, and the employee relayed that information to Mr. Murphrey. Meanwhile, the assailant passed back through the kitchen and left the victim's home. Mr. Murphrey arrived home to find the victim still on the floor with her legs tied.

STATE v. CARMON

[169 N.C. App. 750 (2005)]

Captain Jeff Peele of the Greene County Sheriff's Office was the first law enforcement officer to arrive on the scene. The victim described her assailant to Captain Peele as a black male of medium height, wearing a black covering on his face, rolled cuff jeans, brown boots, and a dark blue jacket. Captain Peele also talked by phone to a friend of the victim, Danielle Harrison, who reported having seen a black male on a bicycle turn into the victim's driveway just before 8 a.m. that morning. After about an hour, Captain Peele was called to assist another officer with a suspect. The suspect, wearing blue jeans, a white shirt, and brown boots, was on a bicycle when the officer first spotted him and sped up as soon as he passed by the officer. The officer watched the suspect hide his bicycle in the tall grass behind a mini-mart owned by the Murphreys, where the suspect was finally stopped. The suspect, later identified as defendant, was arrested and patted down, and the officers found a black stocking in his front pocket.

After defendant was taken into custody following his arrest, he gave consent to search his bedroom at his residence. Officers found a blue jacket in defendant's bedroom. Captain Peele and Officer David Tyndall read defendant his Miranda rights and interviewed him. Defendant read a statement provided by Officer Tyndall and signed it without correction. In the statement, defendant said he rode a bicycle to the victim's home with an accomplice, Curtis Dixon, and got money from a burgundy bag. Defendant claimed he left the home while Dixon remained. Dixon was later questioned by another officer but was not charged.

Defendant was indicted on 25 March 2002 on charges of felonious breaking and entering, robbery with a dangerous weapon, first degree kidnapping, assault inflicting serious bodily injury, and assault with a deadly weapon inflicting serious injury. On 26 June 2002, defendant filed a motion to suppress evidence of any and all statements made by him. The trial court denied the motion, and jury selection began on 1 July 2002. The jury was not able to reach a unanimous verdict on the charges, and Judge Benjamin G. Alford declared a mistrial on 3 July 2002.

On 18 September 2002, the State sought a change of venue for defendant's second trial. Without hearing, the motion was denied. Jury selection began on 7 January 2003, and again, the jury was unable to reach a unanimous verdict on the charges. Judge Paul L. Jones declared a mistrial on 14 January 2003.

On 7 March 2003, the State again sought change of venue for defendant's third trial. In the alternative, the State sought a special venire from another county. Judge Jones denied the motion to change venue but ordered a special venire to be brought in from Wayne County, over defendant's objection.

Prior to the third trial, defendant renewed his motion, filed prior to the first trial, to suppress his statements made to law enforcement officers. The trial court declined to revisit the issue of the voluntariness of defendant's statements after arrest, and jury selection began on 17 May 2003.

The jury convicted defendant on 22 May 2003 of felonious breaking and/or entering, robbery with a dangerous weapon, and misdemeanor assault inflicting serious injury. Defendant gave notice of appeal in open court the same day.

I.

[1] By his first assignment of error, defendant argues the trial court erred by denying defendant's motion to suppress his post-arrest statements because law enforcement officers subjected him to a custodial interrogation without advising defendant of his Miranda rights. Defendant raises only a general challenge to the trial court's ruling on the motion to suppress and does not except specifically to any of the trial court's findings of fact. In such a case, we have held this Court's review is " 'limited to whether the trial court's findings of fact support its conclusions of law.' " *State v. Kornegay*, 149 N.C. App. 390, 393, 562 S.E.2d 541, 544 (quoting *State v. Cheek*, 351 N.C. 48, 63, 520 S.E.2d 545, 554, *cert. denied*, 530 U.S. 1245, 147 L. Ed. 2d 965 (2000)), *disc. review denied*, 355 N.C. 497, 564 S.E.2d 51 (2002).

Here, the trial court, after hearing from Captain Peele, Officer Tyndall, and defendant at *voir dire*, determined that defendant was taken into custody by Captain Peele during Peele's investigation of the attack on the victim. Defendant was placed in an interview room at the Greene County Sheriff's Department, and, prior to his interrogation, was advised by Captain Peele of his Miranda rights. The trial court found that defendant read and understood his rights and voluntarily signed the Miranda form given to him by Captain Peele. The court also found Captain Peele did not ask defendant any questions and defendant did not offer any information about the attack before Captain Peele's administration of the Miranda warning. The court further found that defendant read and signed the statement provided

him by Officer Tyndall and that no threats or promises were made by any law enforcement officers to induce defendant to make the statement. We conclude that the trial court's findings of fact supported its conclusion of law that none of defendant's constitutional rights were violated by his detention and interrogation. Defendant's assignment of error is overruled.

## II.

[2] Next, defendant contends the trial court erred in ordering a special venire panel from Wayne County for defendant's third trial because no evidence exists in the record to support such an order. The trial court has statutory authority to order a change of venue or special venire if necessary to insure a fair trial, *see* N.C. Gen. Stat. §§ 15A-957 and 15A-958 (2003), and the court has inherent authority to order change of venue in the interest of justice. *State v. Chandler*, 324 N.C. 172, 183, 376 S.E.2d 728, 735 (1989). A motion for a change of venue or a special venire panel is left to the sound discretion of the trial court. *Id.* Our Supreme Court has held that the existence of a reasonable likelihood that prejudicial pretrial publicity will prevent a fair trial requires the trial court to order a change of venue or special venire panel. *State v. Boykin*, 291 N.C. 264, 269-70, 229 S.E.2d 914, 917-18 (1976). This standard applies to word-of-mouth publicity as well as pretrial publicity created by the media. *Id.*

Here, the trial court held, because of the small population of Greene County and the "massive publicity" surrounding defendant's two previous mistrials, that there would be a better chance of a fair trial if jurors from outside Greene County heard the case. The judge who heard the State's motion for change of venue was the same judge who presided over defendant's second trial: during jury *voir dire* for the second trial, the jury pool was limited, with only about 26 of 80 possible jurors actually available, and the court had to request additional citizens for the jury pool. Also, during the second trial, the trial court heard testimony that the victim and her husband owned a mini-mart frequented by many residents in the community. Accordingly, it was not an abuse of discretion for the trial court to determine a reasonable likelihood existed that prejudicial pretrial publicity would prevent a fair trial the third time and thus order a special venire.

## III.

[3] Next, defendant contends the trial court erred in denying defendant's objection to the State's use of peremptory challenges to remove

African-American jurors from the panel solely, defendant contends, because of their race. Defendant's objection was based upon the principles set forth in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), for determining whether peremptory challenges violated a defendant's equal protection rights.

> A three-step process has been established for evaluating claims of racial discrimination in the prosecution's use of peremptory challenges. First, defendant must establish a *prima facie* case that the peremptory challenge was exercised on the basis of race. Second, if such a showing is made, the burden shifts to the prosecutor to offer a racially neutral explanation to rebut defendant's *prima facie* case. Third, the trial court must determine whether the defendant has proven purposeful discrimination.

*State v. Cummings*, 346 N.C. 291, 307-08, 488 S.E.2d 550, 560 (1997) (citing *Hernandez v. New York*, 500 U.S. 352, 358-59, 114 L. Ed. 2d 395, 405 (1991)), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). The trial court must make specific findings of fact at each stage of the *Batson* inquiry, and this Court must uphold these findings unless they are clearly erroneous. *State v. Cofield*, 129 N.C. App. 268, 275-76, 498 S.E.2d 823, 829 (1998).

Here, the State exercised five peremptory challenges, all against African-Americans. Two African-American jurors on the jury panel were not challenged by the State. Defendant objected to this use of peremptory challenges under *Batson*, and the trial court in each instance found that defendant failed to establish a *prima facie* showing of purposeful discrimination. Additionally, the trial court found the State offered race-neutral explanations for each peremptory challenge. In particular, three of the prospective jurors were challenged on the basis that they did not disclose prior criminal convictions or pending charges when asked specifically to do so; the fourth prospective juror had just been released from prison; and the fifth prospective juror had a son with a criminal conviction. The trial court found each explanation credible, and defendant does not challenge these findings on appeal. We uphold the trial court's rulings on defendant's *Batson* objections, as the findings that defendant failed to present a *prima facie* case of discrimination are not clearly erroneous, and the findings on the State's race-neutral explanations are unchallenged. Thus, defendant's assignment of error is without merit.

IV.

[4] Next, defendant challenges the trial court's ruling to admit the victim's testimony about her perceptions of in-court demonstrations from defendant's two previous trials. During the earlier trials, defendant was asked to place the stocking, found in his pocket immediately following his arrest, on his face. At the third trial, rather than provide an in-court demonstration, the State questioned the victim about previous demonstrations. The victim testified that she recalled the mental image of defendant with the stocking on his face and had heard defendant's voice previously in the courtroom. Defendant contends the admission of this testimony violated his Fifth Amendment rights, along with his rights under Article I, §§ 18 and 19 of the North Carolina Constitution.

"Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal." *State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001). Here, defendant did not apprise the trial court that he was raising a constitutional issue by his objection to the State's line of questioning about the victim's perceptions of earlier in-court demonstrations.

Defendant also contends that admission of the testimony violated N.C. Gen. Stat. § 8C-1, Rules 401, 403, and 701, but defendant's brief discusses none of these Rules. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6). Therefore, defendant has failed to properly preserve his arguments on this issue.

V.

[5] In his next assignment of error, defendant contends the trial court erred by asking questions of witnesses and thereby prejudicing the defense. Yet, even defendant concedes the trial court has the authority to question a witness. *See* N.C. Gen. Stat. § 8C-1, Rule 614 (2003). The court may question witnesses to clarify confusing or contradictory testimony. *State v. Quick*, 329 N.C. 1, 21-22, 405 S.E.2d 179, 192 (1991) (citation omitted). However, the trial court "may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2003). Defendant bears the burden of showing the trial court's comments were prejudicial. *State v. Summerlin*, 98 N.C. App. 167, 174, 390 S.E.2d 358, 361, *disc. review denied*, 327 N.C. 143, 394 S.E.2d 183 (1990).

Defendant contends that the trial court's clarification of questions to several witnesses rose to the level of expressing an opinion that defendant was guilty. After considering the questions asked by the trial judge to several witnesses in their proper context, we conclude that the questions did not exceed the boundaries of clarification. Moreover, defendant does not establish that any of the trial court's questions were prejudicial. This assignment of error is overruled.

## VI.

[6] Defendant next argues the trial court erred in overruling defendant's objection to the admission of testimony from Captain Peele regarding the credibility of an alleged accomplice. When a defendant makes pretrial statements implicating another person in the commission of the crime, testimony of police that they believed the alleged suspect's denial of involvement in the crime may not be offered as evidence of the alleged suspect's general credibility, but as an explanation for the jury of why this person was eliminated as a suspect. *See State v. Richardson*, 346 N.C. 520, 534, 488 S.E.2d 148, 156 (1997) (holding it was incumbent upon the State to explain to the jurors why a third person who defendant alleged to be the perpetrator was eliminated as a suspect), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 652 (1998); *State v. Baker*, 338 N.C. 526, 554-55, 451 S.E.2d 574, 591 (1994) (holding that police testimony about a former suspect's alibi and lack of motive to commit the crime was admissible as opinion testimony under Rule 701).

Here, defendant's pretrial statement to police implicated Curtis Dixon as an accomplice in the crime. Thus, Captain Peele's testimony regarding his impression of Dixon's denial of involvement was admissible not as to Dixon's general credibility and character, but rather as an explanation for why Dixon was not arrested. This assignment of error is overruled.

## VII.

[7] Finally, defendant assigns as error the trial court's decision to admit hearsay testimony from the State's witness Officer Donald Newton. Defendant contends the State offered the out-of-court statement of Curtis Dixon that Dixon had not been with defendant at the time of the attack to prove the truth of the matter asserted, and as such, the statement was inadmissible hearsay. Where hearsay testimony is admitted over objection but nearly identical testimony is admitted without an objection, the erroneous admission is rendered

harmless. *See State v. Wright*, 270 N.C. 158, 159, 153 S.E.2d 883, 883-84 (1967) (benefit of defense objection to incompetent evidence is lost where same evidence was theretofore admitted without objection); *see also State v. Brown*, 13 N.C. App. 280, 285, 185 S.E.2d 486, 489 (1971).

Here, Officer Newton testified, on direct examination and over defendant's objection, that Dixon said he was not present with defendant at the time of the attack. However, although defendant did object to this hearsay testimony, defendant elicited the same testimony during cross-examination of Officer Newton. As defendant elicited this testimony, he cannot now complain that the earlier admission of the nearly identical testimony was prejudicial. *See Brown*, 13 N.C. App. at 285, 185 S.E.2d at 489 (where defendant elicited on cross-examination testimony substantially the same as testimony objected to on re-direct, admission of complained of testimony was not prejudicial). We find the admission of Dixon's out-of-court statement to be harmless error, and overrule defendant's final assignment of error.

No error.

Judges WYNN and HUDSON concur.