STATE OF NORTH CAROLINA v. RANDY WAYNE BINGHAM

No. COA03-1137

(Filed 20 July 2004)

## 1. Sexual Offenses— statutory—evidence sufficient

On a motion to dismiss, the court is concerned only with the sufficiency of the evidence and not its weight. Defendant's motion to dismiss a statutory sex offense charge was

properly denied where most of the evidence was that the alleged sexual acts were merely poses for photographs, but there was some testimony that defendant, age 51, performed cunnilingus on the 13-year-old victim.

**2. Rape; Sexual Offenses— statutory—specificity of evidence—sufficient**

The testimony of a 13-year-old statutory rape and sexual offense victim that certain sexual acts occurred with defendant 25-40 times at intervals during an 8 month period was sufficient to deny defendant's motion to dismiss, although the victim could not remember the details because it was ". . . basically the same thing over and over again."

**3. Sexual Offenses— statutory—sufficiency of evidence— activity with another with defendant watching**

A charge of statutory sex offense should have been dismissed where there was evidence that defendant forced the victim to perform cunnilingus on her mother, but there was no activity between the victim and defendant. The State did not proceed on an aiding and abetting theory.

**4. Sexual Offenses— statutory—evidence of rape—no other activity—evidence not sufficient**

The trial court should have dismissed a charge of statutory sex offense where there was sufficient evidence of statutory rape, but no evidence of a separate sexual offense.

**5. Criminal Law— jury deliberations—written statements in jury room—not prejudicial**

Allowing the jury to take written statements from a statutory rape and sex offense victim and her mother into the jury room during deliberations was not prejudicial where the evidence was identical to that presented on direct examination.

**6. Sentencing— aggravating factors—position of trust or confidence—dating victim's mother**

There was no error in finding in aggravation that a statutory rape and sex offense defendant took advantage of a position of trust or confidence where defendant was dating the victim's mother and they all lived in defendant's house for a time before the abuse began.

STATE v. BINGHAM

[165 N.C. App. 355 (2004)]

**7. Sentencing— aggravating factors—joining with more than one other person—evidence not sufficient**

The trial court should not have found in aggravation that a statutory rape and sex offense defendant joined with more than one other person in committing the offenses. The evidence at trial was that defendant and the victim's mother were the only ones abusing her.

**8. Rape; Sexual Offenses— short form indictment—statutory rape and statutory sexual offense**

There was no error in using the short form indictment for statutory rape and statutory sexual offense.

Appeal by defendant from judgment entered 9 December 2002 by Judge Henry E. Frye, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 7 June 2004.

*Attorney General Roy Cooper by Assistant Attorney General Anne M. Middleton for the State.*

*Paul Pooley for the defendant.*

TIMMONS-GOODSON, Judge.

Randy Wayne Bingham ("defendant") appeals his convictions of six of the seven counts of statutory rape, six of the seven counts of statutory sexual offense and seven counts of indecent liberties with a child. For the reasons stated herein we conclude that the trial court erred by denying defendant's motion to dismiss two of the counts of statutory sex offense. We also conclude that one of the trial court's aggravating factors for sentencing was not supported by the evidence, and we remand this case for resentencing.

The evidence presented at trial tends to show the following: In November 2000, defendant was dating Diana Lewis[1] ("Diana"). Defendant was fifty-one years old. Defendant and Diana lived in separate houses on Central Avenue in High Point, North Carolina. Diana lived with her daughter, Haley Brooks ("Haley"), and her son, David Brooks ("David"). On 13 November 2000, Haley turned thirteen years old. Diana and Haley were at defendant's house when defend-

---

1. To protect the identities of the witnesses in this case, the mother will be referred to by the pseudonym "Diana Lewis." The minor children will be referred to by the pseudonyms "Haley Brooks" and "David Brooks."

ant presented Haley with a vibrating sex instrument as a birthday gift. Haley declined the gift. Defendant told Haley that it was Diana's fantasy for Diana and defendant to teach Haley about sex. Haley responded negatively. Defendant and Diana told Haley that she could either "be in their circle" or pack her bags and go live with her grandmother.

Haley left defendant's house, went to the house that she shared with Diana and David, and began to pack her belongings in a bag. Diana went to the house, spoke with Haley, and brought her back to defendant's house. Either on that night or a few days later, defendant told Haley that he wanted to have sex with her. Haley refused. Defendant aggressively pursued Haley until, out of fear, she undressed and laid on defendant's bed. Defendant engaged in vaginal intercourse with Haley.

A few days later, Haley was at defendant's house when he led her into his bedroom. Defendant and Diana performed cunnilingus on Haley, and defendant engaged in vaginal intercourse with Haley. Defendant asked Haley to perform fellatio on him, but she refused.

In December 2000, Diana, Haley and David moved into defendant's two-bedroom house. Defendant and Diana shared one bedroom. Haley and David shared the other bedroom. On or around 25 December 2000, defendant gave Diana and Haley matching lingerie, which included sheer negligees, stockings, and thong underwear. Defendant had Diana and Haley wear the lingerie as he took photographs of the three of them engaged in sexual poses.

After Haley's birthday in November, defendant would engage in sex with her as many as three times per week. On some occasions, Diana would participate in sex with defendant and Haley. Defendant also forced Haley to watch pornographic videos with him and to drink alcoholic beverages. Defendant and Diana eventually moved Haley's bed into their bedroom. Haley slept in the bedroom with defendant and Diana, and David slept in the other bedroom.

On 14 February 2001, defendant and Diana engaged in sexual intercourse with Haley. On 12 July 2001, defendant suggested that Haley perform cunnilingus on Diana. Diana had complained to defendant that Haley "never did anything for her" and that Haley "never pleased her." Haley first refused to perform cunnilingus on Diana, but relented out of fear of defendant.

One evening in August 2001, defendant and Haley were cooking dinner outside on a grill when defendant asked Haley to have sex with him. Haley refused because the next-door neighbor was in his yard. Defendant told Haley that if she did not let him have sex with her, he would push her on the ground and rape her. Haley relented and allowed defendant to have vaginal intercourse with her. Diana came home from work later that evening and Haley told Diana that defendant forced her to have sex with him. Diana became angry with defendant and argued with him.

On the weekend of 15 and 16 September 2001, defendant's daughter, Sara,[2] was visiting defendant's house pursuant to the custody arrangement between defendant and his former wife, Lisa Miller ("Lisa"). At approximately 1:00 a.m. on 16 September 2001 defendant telephoned Lisa, told her that he and Diana had been fighting, and indicated that she should come to pick Sara up immediately. When Lisa arrived, Diana and Haley told them about defendant's abusive behavior toward Haley. Lisa took Sara home and subsequently called the Guilford County Department of Social Services ("DSS").

DSS Child Protective Services investigator Clayton Coward ("Coward") visited defendant's house on 18 September 2001 to investigate Lisa's claims. Coward interviewed Haley and Diana separately about defendant's abusive behavior toward Haley. Haley and Diana provided Coward with handwritten statements describing defendant's abusive behavior. Coward then took Haley and David into protective custody and placed them in a foster home. Pursuant to the DSS investigation, defendant was arrested on 18 October 2001 in Pensacola, Florida, and indicted on seven counts of statutory rape, seven counts of statutory sex offense, and seven counts of indecent liberties with a child. Following a jury trial, at which defendant presented no evidence, defendant was convicted of six counts of statutory rape, six counts of statutory sex offense, and seven counts of indecent liberties with a child. It is from these convictions that defendant appeals.

As an initial matter, we note that defendant's brief contains arguments supporting only eight of the original forty-six assignments of error on appeal. The thirty-eight omitted assignments of error are

2. To protect the identities of the witnesses in this case, defendant's daughter will be referred to by the pseudonym "Sara," and his former wife will be referred to by the pseudonym "Lisa Miller."

deemed abandoned pursuant to N.C.R. App. P. 28(b)(6) (2004). We therefore limit our review to those assignments of error properly preserved by defendant for appeal.

The issues presented on appeal are whether the trial court erred by (I) denying defendant's motion to dismiss all charges at the close of the State's evidence; (II) allowing jurors to view the handwritten statements by Diana and Haley during deliberations; (III) finding improper aggravating factors during sentencing; and (IV) accepting short-form indictments for the charges against defendant.

[1] Defendant first assigns error to the failure by the trial court to dismiss four of the counts of statutory rape and four of the counts of sex offense charges at the close of the State's evidence.

In ruling on a motion to dismiss, "the trial court must determine whether there is substantial evidence of each essential element of the offense charged." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387 (1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When reviewing the evidence, the trial court must consider even incompetent evidence in the light most favorable to the prosecution, granting the State the benefit of every reasonable inference. *See State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

The criminal statute for statutory rape or sexual offense of a person who is thirteen, fourteen, or fifteen years old provides that "[a] defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person . . . ." N.C. Gen. Stat. § 14-27.7A(a) (2003). The term "rape" is defined by statute as vaginal intercourse. *See* N.C. Gen. Stat. §§ 14-27.2(a) and 14-27.3(a) (2003). The slightest penetration of the female sex organ by the male sex organ constitutes vaginal intercourse. *State v. Summers*, 92 N.C. App. 453, 456, 374 S.E.2d 631, 633 (1988), *cert. denied*, 324 N.C. 341, 378 S.E.2d 806 (1989). *See also* N.C. Gen. Stat. § 14-27.10 (2003). The term "sexual act" is defined in pertinent part as "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse." N.C. Gen. Stat. § 14-27.1(4) (2003).

In the present case, defendant argues that the trial court should have granted his motion to dismiss with respect to the charge of

statutory sex offense on or between 1 December 2000 and 31 January 2001. We disagree.

At trial, Haley testified that defendant gave her lingerie on "Christmas Night." Haley further testified that she and her mother put on the lingerie, and that "[h]e took pictures of my mother and I, and I took pictures of him and my mother, and . . . my mom took pictures of me and him." These pictures were taken with a Polaroid camera. Haley testified that some of the pictures taken that evening, which were destroyed before trial, depicted defendant performing cunnilingus on Haley, engaging in vaginal intercourse with Haley, and Haley performing fellatio on defendant. Haley testified that these were "just poses. None of that actually happened, not that I remember. They were, that was just the way that they had us, that they told me to pose for the pictures." The district attorney asked Haley if there was "any other time in December when anything happened of a sexual nature." Haley replied, "Not that I can remember at this time."

Diana testified that defendant gave Haley the lingerie "[t]wo days after Christmas." The district attorney also questioned Diana about the pictures as follows:

Q: Now, in the pictures you described it as posing?

A: Yes, sir.

Q: Were you performing any sexual acts in the pictures?

A: No, sir.

Q: Just pretending?

A: Yes, sir.

The district attorney later asked Diana if any sexual activity occurred that night. Diana said that "Mr. Bingham had oral sex with [Haley]."

We conclude that Diana's testimony that defendant performed cunnilingus on Haley is sufficient to overcome defendant's motion to dismiss the charge of statutory sex offense. We recognize the discrepancy between Haley's testimony and Diana's testimony about whether any sexual activity occurred between defendant and Haley that evening. However, "[i]n considering a motion to dismiss, the trial court is concerned only with the sufficiency of the evidence, not with the weight of the evidence." *State v. Lowery*, 318 N.C. 54, 71, 347 S.E.2d 729, 741 (1986), *citing State v. Gonzalez*, 311 N.C. 80, 316

S.E.2d 229 (1984). Accordingly, we hold that the trial court did not err by denying defendant's motion to dismiss the charge of statutory sex offense on or between 1 December 2000 and 31 January 2001.

[2] Defendant next argues that the trial court should have granted his motion to dismiss with respect to the charges of statutory rape on or between 1 December 2000 and 31 January 2001, statutory rape on or between 1 March 2001 and 30 April 2001, statutory sex offense on or between 1 March 2001 and 30 April 2001, statutory rape on or between 1 May 2001 and 30 June 2001, and statutory sex offense on or between 1 May 2001 and 30 June 2001. Defendant argues that the State did not present evidence of specific sexual acts that occurred during those time periods. Defendant contends that because "no evidence tied to the dates referenced in these indictments was offered," the evidence raises only suspicion or conjecture regarding the commission of the offenses and the identity of the perpetrator.

Defendant's argument is similar to the argument presented in *State v. Burton*, 114 N.C. App. 610, 442 S.E.2d 384 (1994). In *Burton*, the accusing witnesses alleged that the defendant sexually abused them "two or three times a week" between 1975 and 1976. 114 N.C. App. at 613-14, 442 S.E.2d at 386. The defendant argued that "the State failed to produce sufficient evidence establishing that the incidents alleged therein occurred during the time periods stated in the indictments." 114 N.C. App. at 612, 442 S.E.2d at 385. This Court held that

> In cases involving allegations of child sex abuse, temporal specificity requirements are further diminished. Children frequently cannot recall exact times and dates; accordingly, a child's uncertainty as to the time of the offense goes only to the weight to be given that child's testimony. Judicial tolerance of variance between the dates alleged and the dates proved has particular applicability where, as in the case *sub judice*, the allegations concern instances of child sex abuse occurring *years before*. Unless a defendant demonstrates that he was deprived of the opportunity to present an adequate defense due to the temporal variance, the policy of leniency governs.

114 N.C. App. at 613, 442 S.E.2d at 386 (citations omitted). Based on these principles, this Court concluded that defendant's motion to dismiss was properly denied. 114 N.C. App. at 614, 442 S.E.2d at 386.

In the case *sub judice*, Haley testified that between 13 November 2000 and August 2001, defendant engaged in sexual activity with her

STATE v. BINGHAM

[165 N.C. App. 355 (2004)]

twenty-five to forty times. When the district attorney asked Haley if she could remember details of the abuse, Haley testified that she could not "because it happened so many times, but it was basically the same thing over and over again." The district attorney later engaged in the following dialogue with Haley:

> Q: Once things started on November the 13th, at your birthday, how often would things occur of a sexual nature between you and Randy Bingham?

> A: Sometimes they were like once a week and then sometimes it was twice a week or three times a week, or, you know, like as much as possible for him.

> . . . .

> Q: And was that, when you say it happened sometimes those many times per week, was that every week, [Haley]?

> A: It could be like every other week.

> . . . .

> Q: Would it be fair and accurate to say, [Haley], that some-thing occurred of a sexual nature on some repeated in-terval over the period from November the 13th [of 2000] until August of 2001?

> . . . .

> A: Yes.

> . . . .

> Q: And on each occasion when something would happen, what would be the sexual activity?

In response to the last question, Haley testified that defendant would digitally penetrate her vagina, and engage in fellatio, cunnilingus and vaginal intercourse with her.

Based on this testimony, and in accordance with *Burton*, we conclude that the trial court properly denied defendant's motion to dismiss the aforementioned charges.

[3] Defendant next argues that the trial court should have granted his motion to dismiss with respect to the charge of statutory sex offense on or about 12 July 2001. We agree.

Haley testified on direct examination about the events of 12 July 2001 as follows:

Q: Do you remember the date that [defendant] had had [sic] you perform oral sex on your mom for the first time?

A: July 12th, I believe.

Q: Of 2001?

A: Yes.

Q: Tell the jury about that date, what occurred then?

A: My mom had just gotten home from work and they had an argument about, well, my mom brought up the fact that I never did anything for her and she said that there was no point because I never pleased her or anything. And Randy got all mad and everything and he came in there and he started yelling at me saying, you need to start doing stuff for your mom and all of this. And I said, well, I'm not about to go down on my mom, because for one thing I think it's disgusting and for another thing, it's my mom and I would never do anything like that. And he got really mad and then my mom came in there and he said, I'd better go down on her now. So of course him being like ten times stronger than me, and of course, me being scared of him, I did it. And I mean, you know, if you were scared you'd probably do it, too.

Q: Well, what happened sexually on July the 12th other than performing oral sex on your mom?

A: Nothing that I remember.

Q: Nothing happened between you and Randy Bingham?

A: Not that I remember.

We conclude that defendant's actions on 12 July 2001 do not fall within the definition of statutory sexual offense as provided in § 14-27.7A. There was no sexual act between Haley and defendant on that date. Assuming *arguendo* that there was sufficient evidence to support defendant's conviction of statutory sexual offense on an aider and abettor theory, the record is clear that the State did not proceed on this theory. At no time did the State seek to prove that defendant aided or abetted another or seek a jury instruction regarding his role as a non-principal participant in the crime.

Accordingly, we conclude that the trial court erred by denying defendant's motion to dismiss this charge.

[4] Defendant also argues that the trial court should have granted his motion to dismiss with respect to the charge of statutory sex offense on or about 20 August 2001. We agree.

Haley testified on direct examination that on or about 20 August 2001 defendant coerced her into engaging in vaginal intercourse outside of their home. Defendant concedes that this evidence is sufficient to uphold his conviction of statutory rape on this date. However, he contends that there was no evidence of a separate sexual offense as defined by statute. We agree. Defendant's actions with Haley on or about 20 August 2001 do not come within the definition of statutory sexual offense discussed *supra*. We conclude that the trial court erred by denying defendant's motion to dismiss the charge of statutory sex offense on 20 August 2001.

[5] Defendant next argues that the trial court committed prejudicial error by allowing jurors to take the handwritten statements by Diana and Haley into the jury room during deliberations. We disagree.

"Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received into evidence." N.C. Gen. Stat. § 15A-1233(b) (2003). Where the trial court allows the jury to take such evidence into the jury room over a party's objection, this Court may correct the error if it is prejudicial to the defendant. N.C. Gen. Stat. § 15A-1442(6) (2003); *see State v. Taylor*, 56 N.C. App. 113, 115, 287 S.E.2d 129, 130-31 (1982). On appeal, the defendant must demonstrate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Taylor*, 56 N.C. App. at 115, 287 S.E.2d at 130-31.

In the case *sub judice*, defendant did not consent to the two handwritten statements being permitted in the jury room during deliberations. Thus, we conclude that the trial court erred in permitting the statements to be taken into the jury room. The question we must next consider is whether this error was prejudicial in that there was a reasonable possibility that, but for the error, a different trial outcome would have resulted. The evidence provided in the written statements is identical to the evidence presented by Diana and Haley

on direct examination. Thus, the written statements did not provide the jury with any evidence that was not already presented at trial. Accordingly, we conclude that there is no reasonable possibility that the jury would have reached a different verdict if they had not been allowed to take the written statements into the jury room during deliberations. This assignment of error is overruled.

Defendant next argues that the trial court erred by improperly finding two aggravating factors. The trial court found as aggravating factors in each of the judgments that (1) "The defendant induced others to participate in the commission of the offense;" (2) "The defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy;" and (3) "The defendant took advantage of a position of trust or confidence to commit the offense." N.C. Gen. Stat. § 15A-1340.16(d)(1), (d)(2) and (d)(15) (2003). The trial court then sentenced defendant in the aggravated range.

**[6]** Defendant argues that the trial court erred by finding that defendant took advantage of a position of trust or confidence to commit the offense. We disagree.

A finding that a defendant took advantage of a position of trust or confidence depends on "the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other." *State v. Daniel*, 319 N.C. 308, 311, 354 S.E.2d 216, 218 (1987). In *State v. McGriff*, 151 N.C. App. 631, 566 S.E.2d 776 (2002), this Court held that where prior to the incidents leading to the defendant's convictions, the victim knew the defendant because defendant was dating and living with her friend's sister, the victim and her friend visited defendant's house every day after school, and the victim had known defendant for approximately two months, there was sufficient evidence that defendant took advantage of a position of trust. 151 N.C. App. at 640, 566 S.E.2d at 781-82.

In the present case, the evidence tends to show that Haley met defendant when defendant and Diana began dating in November 1999. Diana, Haley and David moved into defendant's house in December 1999 and lived there until July 2000 when they moved into a house down the street. Diana, Haley and David lived apart from defendant until December 2000 when they moved back into his home. Therefore, defendant had known Haley for one year, and lived in the same house as Haley for seven months of that year, before he began to abuse her. We conclude, in accordance with *McGriff*, that this is sufficient evi-

dence that defendant took advantage of a position of trust or confidence to commit the offenses of which he was convicted.

**[7]** Defendant also argues that the evidence does not support the finding that defendant joined with more than one person in committing the offenses. We agree.

The evidence presented at trial tends to show that defendant and Diana were the only persons sexually abusing Haley. There is no evidence to implicate the involvement of a third person. Thus, we conclude that the trial court erred by finding that defendant joined with more than one other person in committing the offenses. *See State v. Moses*, 154 N.C. App. 332, 340, 572 S.E.2d 223, 229 (2002).

" 'When the trial judge errs in finding an aggravating factor and imposes a sentence in excess of the presumptive term, the case must be remanded for a new sentencing hearing.' " *Moses*, 154 N.C. App. at 340, 572 S.E.2d at 229, *quoting State v. Wilson*, 338 N.C. 244, 259, 449 S.E.2d 391, 400 (1994). Accordingly, we remand this case for resentencing.

**[8]** Defendant's final argument is that the trial court erred by accepting short-form indictments for the statutory rape and statutory sexual offense charges against defendant. We disagree.

Defendant acknowledges that the North Carolina Supreme Court has held that the use of short-form indictments is constitutional. *See State v. Wallace*, 351 N.C. 481, 508, 528 S.E.2d 326, 343, *cert. denied*, 531 U.S. 1018 (2000), *reh'g denied*, 531 U.S. 1120 (2001) (noting the "overwhelming case law approving the use of short-form indictments and the lack of a federal mandate to change that determination"); *State v. Lowe*, 295 N.C. 596, 603-04, 247 S.E.2d 878, 883-84 (1978); N.C. Gen. Stat. §§ 15-144.1 and 15-144.2 (2003). Yet defendant raises these arguments to preserve them for later review. As this Court is bound by the Supreme Court's holding in *Wallace*, we overrule this assignment of error.

For the aforementioned reasons, we conclude that the trial court committed no prejudicial error with regard to defendant's convictions of statutory sex offense on or between 1 December 2000 and 31 January 2001, statutory rape on or between 1 December 2000 and 31 January 2001, statutory sex offense on or between 1 March 2001 and 30 April 2001, statutory rape on or between 1 March 2001 and 30 April 2001, statutory sex offense on or between 1 May 2001 and 30 June 2001, and statutory rape on or between 1 May 2001 and 30

June 2001. We reverse defendant's convictions of statutory sex offense on or about 12 July 2001 and statutory sex offense on or about 20 August 2001. We also conclude that the trial court erred in sentencing defendant.

NO ERROR in part, REVERSED in part, and REMAND for resentencing.

Chief Judge MARTIN and Judge HUNTER concur.