STATE OF NORTH CAROLINA v. KENNETH WILLIAM BATES

No. COA04-777

(Filed 2 August 2005)

**1. Evidence— direct examination—leading questions— child—sexual matters**

The trial court did not abuse its discretion in a multiple first-degree statutory sexual offense, double attempted first-degree statutory sexual offense, and multiple taking indecent liberties with a minor case by allowing the State to ask the minor child victim leading questions on direct examination, because: (1) the minor child was eleven years old at the time of trial and her testimony dealt with sexual matters of a delicate nature; and (2) the State did not ask leading questions throughout its examination of the minor child, but only where she was hesitant to answer.

**2. Jury— failure to dismiss juror who knew witness—abuse of discretion standard**

The trial court did not err in a multiple first-degree statutory sexual offense, double attempted first-degree statutory sexual offense, and multiple taking indecent liberties with a minor case by failing to dismiss one of the jurors when she disclosed during trial that she knew one of the witnesses for the State, because: (1) defendant failed to challenge the juror upon her disclosure at trial; and (2) the determination of whether to dismiss a juror for cause rests in the sound discretion of the trial court, and defendant failed to show any abuse of discretion or prejudice due to the continued service of this juror when the juror stated she believed that she could continue to be fair and impartial to both parties.

**3. Indecent Liberties; Sexual Offenses— motion to dismiss— sufficiency of evidence—generic testimony of child sex abuse victim**

The trial court did not err in a multiple first-degree statutory sexual offense, double attempted first-degree statutory sexual offense, and multiple taking indecent liberties with a minor case by denying defendant's motion to dismiss all or some of the charges against him at the close of the State's evidence and at the close of all evidence even though defendant contends the evidence was sufficient to support only those charges where the minor child was able to describe defendant's actions in some detail, because: (1) our Court of Appeals has previously upheld the denial of a motion to dismiss where the evidence consisted of similarly generic testimony of a child sex abuse victim; and (2) defendant gave a statement in which he admitted to touching the minor child's vagina three times, licking it three times, and having the minor child squeeze his penis three times.

**4. Constitutional Law— denial of unanimous verdict—sexual offenses**

Defendant was denied his right to a unanimous verdict with respect to convictions on six counts of first-degree sexual offense where defendant was charged with eleven counts of that offense; evidence of between four and ten possible instances of first-degree sexual offense was presented at trial; the State did not effectively associate each particular offense or incident with a particular indictment or verdict sheet; the trial court did not explain the need for unanimity on each specific sexual incident; and neither the indictments, jury instructions nor verdict sheets associated a given indictment or verdict sheet with any particular incident.

**5. Constitutional Law— denial of unanimous verdict—indecent liberties**

Defendant was denied his right to a unanimous verdict with respect to convictions on seven counts of indecent liberties with a minor where defendant was charged with ten counts of taking indecent liberties with a minor; more incidents of indecent liberties were presented at trial than the number charged; evidence presented on charges of first-degree sexual offense could also support convictions for indecent liberties; the trial court gave the pattern jury instruction for indecent liberties with no explanation

as to which acts by defendant could support a conviction for indecent liberties; and the jury received no guidance from the trial court and no indication from the State as to which offenses were to be considered for which verdict sheets.

**6. Indecent Liberties— multiplicitous indictments—absence of prejudice**

Indictments charging defendant with indecent liberties and the alternate crime of lewd and lascivious conduct for each violation of N.C.G.S. § 14-202.1 were multiplicitous, but defendant was not prejudiced because judgment was arrested on each count of defendant's convictions for lewd and lascivious conduct.

**7. Constitutional Law— unanimous verdict not denied—attempted sexual offenses**

Defendant was not denied his right to a unanimous verdict with respect to convictions on two counts of attempted first-degree sexual offense where defendant was charged with only two counts of this offense and only two instances of this offense were presented to the jury by testimony of the child victim.

Appeal by defendant from judgments entered 31 October 2003 and 4 November 2003 by Judge W. Allen Cobb, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 21 March 2005.

*Roy Cooper, Attorney General, by Anita LeVeaux, Assistant Attorney General, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was found guilty by a jury of six counts of first-degree statutory sexual offense, two counts of attempted first-degree statutory sexual offense, seven counts of taking indecent liberties with a minor, and six counts of lewd and lascivious conduct with a minor. Judgment was arrested as to the six counts of lewd and lascivious conduct with a minor. Defendant appeals from judgment imposing two consecutive sentences of not less than 192 months and not more than 240 months of imprisonment and a third consecutive sentence of not less than 125 months and not more than 159 months of imprisonment.

The evidence at defendant's trial tended to show that KG, a ten-year-old child, lived in Fremont, North Carolina in the same neighborhood as defendant, his wife, and her three children from previous marriages. KM, the youngest of defendant's stepchildren, was eight years old at the time of the alleged events, and she was "good friends" with KG. KG testified that she spent one night every other weekend at defendant's house between December, 2002 and March, 2003. In March, KG told another friend on the school bus that defendant had touched her inappropriately, and the friend informed a teacher at KG's school. The teacher contacted the school social worker, who notified the Wayne County Department of Social Services (DSS).

Roseanne Diorio, a social worker with DSS, interviewed defendant at his house with his wife present. Defendant said that KG followed him around, wrote him love letters, and always wanted to sit in his lap. He said she did not have a father figure in her life, and he believed she wanted him to play that role. He said KG had made such accusations before, but when he and his wife talked to her about it, she admitted she had lied. He denied all allegations of inappropriate activity. Ms. Diorio also interviewed defendant's wife and her two oldest children, each of whom stated that KG constantly followed defendant around and wrote him love letters. They said KG also wrote love letters to defendant's stepson.

At trial, KG testified that the second time she visited KM's home, defendant called her into the living room, put his hand down the front of her shirt, and touched her chest through her clothes. The following weekend, when she visited defendant's home again, she testified that "[h]e done the same thing. He went down my shirt again." That same weekend, KG said she and KM were playing in KM's room when defendant walked in and told KM to go talk to her mother. After KM left the room, KG said defendant "was about to pull my pants down," but he heard KM coming back so he stopped. KG said defendant's hands "almost" went inside her pants. Later, she testified that on that occasion he did actually touch her "private" with his hand.

On "another weekend," defendant told KG to go into the bathroom. Once there, KG testified defendant was "pull[ing] my pants down and trying to lick it, but he heard [KM] coming so he didn't get a chance to lick it." Later she testified defendant did actually "lick[] it" while they were in the bathroom. She also testified that one night, she and KM were sleeping on the living room floor. KM was asleep, but KG woke up and heard defendant walking into the living room.

STATE v. BATES

[172 N.C. App. 27 (2005)]

He came over to her and pulled her pants down to her knees. Then, according to KG, he "touched me in the inside." KG testified that defendant had touched her vagina with his hand "[l]ike four times" and with his mouth "[a]bout maybe two times."

KG also testified that she touched defendant's penis on two occasions. Once, KG said she was sitting on the couch when defendant "sat down next to me and . . . took my hand and put it down his pants," touching his "private." Another time in KM's bedroom, defendant "just took my hand and put it down his pants and he told me to squeeze." In all, KG said she had seen defendant's penis "[a]bout six times." When asked if she could say when any of the acts described occurred, KG could only say they happened during the time she was spending the night with KM between December and March.

Detective Tammy Odom of the Wayne County Sheriff's Department investigated the allegations against defendant. During an interview with KG, Detective Odom wrote out a statement for KG in which KG said that on one occasion, defendant "reached up and put his hand down my shirt and inside my bra. He started feeling of my chest." KG stated that on another occasion, defendant "stuck his hand down my pants and rubbed my private part. He did this for about a minute. After that he pulled his private part out. He grabbed my hand and put it on his private part. He told me to squeeze it." She also stated that the following morning defendant "pulled my sweat pants down and my panties. He was bending down to lick my privates when [KM] walked in." In all, KG said in her statement, defendant "touched my private part about six times and he has licked my private part about six times. He has made me touch and squeeze his private part about four times . . . [and he] touched my chest one time . . . ."

Detective Odom also interviewed defendant regarding the allegations. Defendant gave a statement, written by Detective Odom and signed and initialed by defendant, in which he said, in pertinent part,

While [KG] was spending the night on three different times I pulled the head of my penis out and [KG] squeezed it. On three different times I touched [KG] on her vagina, on the inside of her clothes, with my fingers. One of these times I stuck my fingers inside of her vagina because she told me to. I tried to stop once and she wouldn't let me. This happened one time in the living room, one time in [KM]'s room, and one time in the children's bathroom. I have licked [KG]'s vagina three times. This has hap-

pened once in the living room, one time in [KM]'s room, and one time in the children's bathroom.

Defendant was subsequently arrested.

While defendant was in jail, Roseanne Diorio interviewed him a second time regarding the allegations. Defendant claimed that Detective Odom tricked him into confessing and had "mixed his words up." He stated, however, that KG had once "tried to stick her hands down his pants to touch his penis." On another occasion, he said, KG "called him into the bathroom and when he got in there she had her pants and underwear pulled down to her knees." When Ms. Diorio asked if he had ever performed oral sex on KG, he stated that "it had only happened once and he was really sorry about it."

Defendant was charged, in true bills of indictment, with eleven counts of first-degree sexual offense, two counts of attempted first-degree sexual offense, ten counts of taking indecent liberties with a minor, and ten counts of lewd and lascivious conduct with a minor. A jury found him guilty of six counts of first-degree sexual offense, two counts of attempted first-degree sexual offense, seven counts of taking indecent liberties with a minor, and six counts of lewd and lascivious conduct. Judgment was arrested on the six counts of lewd and lascivious conduct. The remaining convictions were consolidated into three judgments for which defendant received two consecutive sentences of not less than 192 months and not more than 240 months of imprisonment and a third consecutive sentence of not less than 125 months and not more than 159 months of imprisonment. Defendant appeals.

---

Defendant makes the following arguments on appeal: (1) the trial court erred in allowing the State to ask KG leading questions on direct examination; (2) the trial court committed plain error by not dismissing one of the jurors when she disclosed during trial she knew one of the witnesses for the State; (3) the trial court erred by "denying the defendant's motion to dismiss all or some of the charges against him at the close of the State's evidence and at the close of all the evidence, due to the insufficiency of the evidence;" (4) the trial court committed plain error by not distinguishing for the jury the charges against the defendant, thereby denying the defendant a unanimous jury verdict; and (5) the trial court committed plain error by entering judgments and other dispositions which were inconsistent with the court's rulings and the jury's verdicts.

**[1]** We first address whether or not the trial court erred by allowing the State to ask KG leading questions on direct examination. Although leading questions are not generally admitted on direct examination, N.C. Gen. Stat. § 8C-1, Rule 611(c) (2003), "[i]t is within the discretionary power of the trial court to allow leading questions on direct examination, and rulings on the use of such questions are reversible only for an abuse of discretion." *State v. Dalton,* 96 N.C. App. 65, 70, 384 S.E.2d 573, 576 (1989) (citing *State v. Riddick,* 315 N.C. 749, 340 S.E.2d 55 (1986)). It is well settled that where "the witness has difficulty in understanding the question because of age or immaturity or where inquiry is made into a subject of delicate nature such as sexual matters, leading questions are necessary to develop the witness's testimony." *State v. Oliver,* 85 N.C. App. 1, 9, 354 S.E.2d 527, 532, *disc. rev. denied,* 320 N.C. 174, 358 S.E.2d 64 (1987); *see also State v. Wilson,* 322 N.C. 91, 96, 366 S.E.2d 701, 704 (1988). In *Dalton,* this Court found no abuse of discretion where the prosecuting witness was fifteen years old at the time of trial, and her testimony "pertained to sexual matters of a delicate, sensitive, and embarrassing nature." *Dalton,* 96 N.C. App. at 70, 384 S.E.2d at 576. In the present case, KG was eleven years old at the time of trial, four years younger than the witness in *Dalton,* and her testimony similarly dealt with sexual matters of a delicate nature. Furthermore, the record indicates the State did not ask leading questions throughout its examination of KG, but only where KG was hesitant to answer. We therefore find no abuse of discretion by the trial court in allowing the State to ask KG leading questions on direct examination. This assignment of error is overruled.

**[2]** Defendant's next argument is that the trial court committed plain error by not dismissing a juror when she disclosed, during trial, that she knew one of the witnesses for the State. During the State's evidence, Juror Three sent a note to the trial court saying she had known Roseanne Diorio in high school and college. Ms. Diorio married since that time, and the juror did not recognize her new name during jury selection. The juror stated in her note that she would "continue to be fair to both sides as my obligation as a juror." The trial court then questioned the juror as follows:

> THE COURT: . . . Do you, in fact, feel like that friendship would have any bearing on your ability to be fair and impartial in this matter?
>
> JUROR: No.

STATE v. BATES

[172 N.C. App. 27 (2005)]

THE COURT: You just felt like that was your obligation to let us know, is that right?

JUROR: Yes, because I didn't recognize the name due to her getting married.

THE COURT: Does the counsel for either side have any questions for this juror?

MR. GURLEY [counsel for defendant]: I do not, your honor.

MS. KABLER [counsel for the State]: No, sir.

N.C. Gen. Stat. § 15A-1212 sets forth reasons for which a party may challenge a juror for cause, including when a juror "is unable to render a fair and impartial verdict." N.C. Gen. Stat. § 15A-1212(9) (2003). Defendant failed to challenge Juror Three upon her disclosure at trial; therefore, he has not preserved this assignment of error for review. N.C. Gen. Stat. § 15A-1211(c); *see also* N.C. R. App. P. 10(b)(1) (2003) (stating that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context").

Apparently recognizing the consequences of his failure to challenge the juror, however, defendant argues the trial court should have excused the juror under N.C. Gen. Stat. § 15A-1211(d), which allows a judge to dismiss a juror for cause "without challenge by any party if he determines that grounds for challenge for cause are present." N.C. Gen. Stat. § 15A-1211(d) (2003). Defendant contends the proper standard of review for failure to dismiss a juror for cause is plain error. However, our Supreme Court has limited the application of plain error analysis to a trial court's instructions to the jury and rulings on the admissibility of evidence. *State v. Cummings*, 346 N.C. 291, 313-14, 488 S.E.2d 550, 563 (1997), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). Instead, "[t]he determination of whether to grant a challenge for cause rests in the sound discretion of the trial court and will not be disturbed [on appeal] absent a showing of abuse of that discretion. In addition to abuse of discretion, defendant must show prejudice to establish reversible error . . . ." *State v. Grooms*, 353 N.C. 50, 68, 540 S.E.2d 713, 725 (2000), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001) (internal citations omitted). Here, the juror stated she believed she could continue to be fair and impartial to both parties. Defendant has failed to show either an abuse of discretion by

the trial court or that he suffered any prejudice due to the continued service of this juror. This assignment of error is overruled.

[3] Defendant's third argument is that the trial court erred in denying his motion to dismiss all or some of the charges against him at the end of the State's evidence and at the end of all the evidence. Upon a motion to dismiss criminal charges, the trial court must determine whether there is substantial evidence of defendant's guilt of each essential element of the crime. *State v. Holland,* 161 N.C. App. 326, 328, 588 S.E.2d 32, 34 (2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 328, 588 S.E.2d at 34-35 (quoting *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). The evidence is considered in the light most favorable to the State, and the State is entitled to every reasonable inference arising from it. *Id.* The trial court does not weigh the evidence or determine witnesses' credibility. "It is concerned 'only with the sufficiency of the evidence to carry the case to the jury.'" *State v. Thaggard,* 168 N.C. App. 263, 281, 608 S.E.2d 774, 786 (2005) (quoting *State v. Lowery,* 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983)).

Defendant argues that the evidence was sufficient to support only those charges where KG was able to describe defendant's actions in some detail. Defendant contends the motion to dismiss should have been granted on the charges supported solely by KG's statements that, *e.g.,* defendant touched her "about six times" or "[l]ike four times." Our case law does not support such an interpretation of the standard for a motion to dismiss. We have previously upheld the denial of a motion to dismiss where the evidence consisted of similarly generic testimony of a child sex abuse victim. In *State v. Bingham,* 165 N.C. App. 355, 598 S.E.2d 686, *disc. rev. denied,* 359 N.C. 191, 607 S.E.2d 648 (2004), the victim testified that "between 13 November 2000 and August 2001, defendant engaged in sexual activity with her twenty-five to forty times." *Id.* at 362-63, 598 S.E.2d at 691. She testified that this sexual activity included digital penetration, fellatio, cunnilingus, and vaginal intercourse, but she could not remember details of any specific instance "because it happened so many times." *Id.* at 363, 598 S.E.2d at 691. This Court affirmed the trial court's denial of the defendant's motion to dismiss. *Id.; see also State v. Wiggins,* 161 N.C. App. 583, 589 S.E.2d 402 (2003), *disc. rev. denied,* 358 N.C. 241, 594 S.E.2d 34 (2004); *State v. Burton,* 114 N.C. App. 610, 442 S.E.2d 384 (1994).

Furthermore, defendant gave a statement in which he admitted to touching KG's vagina three times, licking it three times, and having KG squeeze his penis three times. We conclude there was sufficient evidence to overcome defendant's motion to dismiss all or some of the charges against him.

**[4]** Defendant also argues, however, that the trial court denied him a unanimous jury verdict. His argument in this respect has merit. Under the North Carolina Constitution, "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1, § 24; *see also* N.C. Gen. Stat. § 15A-1237(b) (2003). When a question of unanimity is raised, "we must examine the verdict, the charge, the jury instructions, and the evidence to determine whether any ambiguity as to unanimity has been removed." *State v. Petty*, 132 N.C. App. 453, 461-62, 512 S.E.2d 428, 434, *disc. rev. denied*, 350 N.C. 598, 537 S.E.2d 490 (1999).

We begin by addressing the charges of first-degree sexual offense. Defendant was charged with eleven counts of first-degree sexual offense, and the jury convicted him of six of these charges. First-degree sexual offense is defined as "a sexual act: (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]" N.C. Gen. Stat. § 14-27.4(a)(1) (2003). A "sexual act" includes "cunnilingus . . . [and] the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C. Gen. Stat. § 14-27.1(4) (2003).

In her testimony at trial, KG described in some detail two instances where defendant touched her vagina with his hand and one where he touched her vagina with his mouth. She also said defendant had touched her vagina with his hand "[l]ike four times" and touched her vagina with his mouth "[a]bout maybe two times." Such generic testimony is sufficient to support a single additional charge and conviction of first-degree sexual offense. *State v. Lawrence*, 165 N.C. App. 548, 556-57, 599 S.E.2d 87, 94, *temp. stay allowed*, 359 N.C. 73, 603 S.E.2d 885 (2004), *disc. rev. allowed*, 359 N.C. 413, 612 S.E.2d 634 (2005) (*Lawrence I*) (stating that where a child has been frequently abused over a period of time, and that child can only testify to this pattern of abuse rather than specific instances, such "generic testimony" can only support one charge and conviction of any given offense); *see also State v. Lawrence*, 170 N.C. App. 200, 612 S.E.2d 678, 686, *temp. stay allowed*, 359 N.C. 640, —— S.E.2d —— (June 2, 2005) (No.293A05) (*Lawrence II*, a case unrelated to *Lawrence I*).

KG's testimony, both specific and generic, is sufficient to support a total of four charges of first-degree sexual offense. Defendant's statement, in which he admits to licking KG's vagina three times and touching her vagina three times, is evidence of six acts of first-degree sexual offense. From the record before us, it is clear the jury had no way to determine if any of the acts described by KG at trial were the same instances of abuse as those described by defendant in his statement. Therefore, evidence of anywhere between four and ten possible instances of first-degree sexual offense was presented at trial.

It is impossible to ascertain which of defendant's six convictions correspond with which of these possible instances of abuse. Although the indictment and verdict sheet attempt to identify each offense by date and act, the dates and acts described do not correspond with the evidence presented at trial. KG was only able to testify that the acts of first-degree sexual offense occurred during the period when she was spending the night at KM's house, which was between December, 2002 and March, 2003. Defendant's statement gave no indication as to when each particular act occurred, and no other witness could establish more specifically the dates of the offenses. The indictment and verdict sheet divide the charges of first-degree sexual offense by month, citing four offenses in January, four in February, and three in March. However, this division appears to be arbitrary, as the evidence did not put any of the incidents as occurring in any particular month. Defendant was convicted of the four January offenses, two by cunnilingus and two by inserting his finger into her vagina, and two February offenses, both by cunnilingus.

We recognize that our case law does not require victims of child sexual abuse to allege dates with specificity. *State v. Brothers*, 151 N.C. App. 71, 81, 564 S.E.2d 603, 609 (2002), *disc. rev. denied* 356 N.C. 681, 577 S.E.2d 895 (2003). Here, however, the problem lies not in the lack of specificity with respect to time, but in the ambiguity created by the failure to relate the charges in the indictment and verdict sheet to specific instances of abuse. As in *Lawrence I*, "although the indictments and verdict sheets were validly drawn, they did not remove the ambiguity in the jury's verdict. None of the verdict sheets associated the offense number with a given incident or separate criminal offense." *Lawrence I*, 165 N.C. App. at 563, 599 S.E.2d at 98.

The Court in *Lawrence I* held that a defendant's right to a unanimous verdict will be protected when, before the jury begins deliberations, either "the State elects which particular criminal offense it will proceed on for a given indictment or verdict sheet," or the trial court

"instruct[s] the jury that they must be unanimous as to the particular criminal offense that the defendant committed." *Lawrence I*, 165 N.C. App. at 559, 599 S.E.2d at 95; *see also Lawrence II*, 170 N.C. App. 200, 211, 612 S.E.2d 678, 686-87 (2005). Here, as we have said, the State did not effectively associate each particular offense or incident with a given indictment or verdict sheet. Nor did the trial court adequately instruct the jury on the requirement of unanimity. The trial court stated that defendant was charged with eleven counts of first-degree sexual offense and gave the pattern jury instruction for that crime. It instructed the jury regarding the requirement of unanimity only as follows: "[y]ou may not return a verdict until all 12 jurors agree unanimously as to each charge. You may not render a verdict by majority vote." Thus, the trial court did not explain "the need for unanimity on each specific sexual incident." *Lawrence II*, 170 N.C. App. at 212-13, 612 S.E.2d at 686. Under *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987), the trial court should have "submitted a specific instruction with respect to unanimity of verdict as to *each* indictment and also assigned *correlating specific alleged acts of sexual offense* to each indictment." *Kennedy*, 320 N.C. at 25, 357 S.E.2d at 362 (emphasis added); *see also Lawrence I*, 165 N.C. App. at 559, 599 S.E.2d at 95.

Because the trial court failed to ensure, by either method described above, that each juror had in mind the same six instances of abuse when voting to convict defendant for first-degree sexual offense, defendant's right to a unanimous jury verdict was jeopardized. "[N]either the indictments, verdict sheets, nor the trial court's instructions, associated a given verdict sheet or indictment with any particular incident." *Lawrence I*, 165 N.C. App. at 560, 599 S.E.2d at 96. Therefore, we are compelled to grant defendant a new trial on all six convictions of first-degree sexual offense.

**[5]** Defendant also argues the trial court denied him a unanimous verdict on the charges of indecent liberties and lewd and lascivious conduct. This argument likewise has merit. N.C. Gen. Stat. § 14-202.1 ("Taking indecent liberties with children") states:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or las-
civious act upon or with the body or any part or member of the
body of any child of either sex under the age of 16 years.

(b) Taking indecent liberties with children is punishable as a
Class F felony.

N.C. Gen. Stat. § 14-202.1 (2003). Defendant was indicted with ten
counts of taking indecent liberties with a minor and ten counts of
lewd and lascivious acts upon a child. We first address the indecent
liberties charges.

Where evidence is presented at trial showing a greater number of
separate criminal offenses than the defendant is charged with, a risk
of a lack of jury unanimity is created. *Lawrence I*, 165 N.C. App. at
558, 599 S.E.2d at 95; *Lawrence II*, 170 N.C. App. at 211, 612 S.E.2d at
684; *State v. Holden*, 160 N.C. App. 503, 508, 586 S.E.2d 513, 517
(2003), *aff'd without precedential value*, 359 N.C. 60, 602 S.E.2d 360
(2004). Defendant was charged with ten counts of taking indecent lib-
erties with a minor, and he was convicted of seven of these charges.
Because indecent liberties does not merge with and is not a lesser
included offense of first-degree sexual offense, the evidence pre-
sented on the charges of first-degree sexual offense may also support
a conviction for indecent liberties. *Lawrence II*, 170 N.C. App. at 214,
612 S.E.2d at 687. Thus, again, it is impossible to tell which particular
acts correspond with which charges and convictions for indecent lib-
erties. *Id.* For the six convictions, the jury members could have
believed defendant guilty of any combination of the following: KG's
three descriptions of first-degree sexual offense, her generic testi-
mony about first-degree sexual offense, her testimony that defendant
put his hand inside her shirt on two occasions, her testimony that she
touched defendant's penis on two occasions, her generic testimony
that she saw his penis about six times, or any of the nine acts defend-
ant described in his statement.

The indictment and verdict sheet distinguish the charges of inde-
cent liberties by month, although as we have noted, these months do
not correspond with the evidence presented by KG or any other wit-
ness. The forms make no attempt to distinguish these charges by inci-
dent. As to the jury instructions, the trial court gave the pattern jury
instruction for indecent liberties with no explanation as to which acts
by defendant might support a conviction on indecent liberties with a
minor. As in *Lawrence II*, "the unanimity of a verdict is jeopardized
in multiple count trials for . . . indecent liberties . . . if more incidents

of the offenses are presented than the number charged, and the jury receives no guidance from the trial court or indication from the State as to which offenses are to be considered for which verdict sheets." *Lawrence II*, 170 N.C. App. at 211, 612 S.E.2d at 685. Therefore, for both of these reasons, we are compelled to grant defendant a new trial as to each of the seven convictions of indecent liberties with a minor.

**[6]** In addition to the ten counts of indecent liberties, defendant was charged with ten counts of lewd and lascivious conduct, presumably under subpart (2) of N.C. Gen. Stat. § 14-202.1(a). However, our Supreme Court has held that "the crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts." *State v. Hartness*, 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990). Parts (a)(1) and (a)(2) of the statute, therefore, do not enumerate "discrete criminal activities," but rather "alternative elements" of "a single wrong." *Id.* at 564, 566, 391 S.E.2d at 179, 180. Charging defendant with two crimes for each violation of N.C. Gen. Stat. § 14-202.1, therefore, resulted in a multiplicitous indictment. *See* Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* § 19.3(c), at 776-77 (1999); *see also State v. Petty*, 132 N.C. App. 453, 463, 512 S.E.2d 428, 435 (1999); *Lawrence II*, 170 N.C. App. at 210, 612 S.E.2d at 685. Defendant, however, has not been prejudiced because judgment was arrested on each of the six convictions of lewd and lascivious conduct. Defendant did not receive multiple sentences for a single offense, which, as this Court noted in *State v. Petty*, "is the principle [sic] danger in multiplicity," *Petty*, 132 N.C. App. at 463 n.2, 512 S.E.2d at 435 (citing 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.2, at 457-58 (1984)), and his protection against double jeopardy was not violated. *See State v. Tirado*, 358 N.C. 551, 578, 599 S.E.2d 515, 534 (2004) (stating that the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution protects against a defendant receiving "multiple punishments for the same offense").

**[7]** Defendant was also charged with, and convicted of, two counts of attempted first-degree sexual offense. Defendant alleges he should be granted a new trial on these charges because of the general lack of unanimity and confusion of the jury. We disagree. At trial, KG testified that on one occasion, defendant "tried" to pull her pants down, and his hand "almost" went inside her pants. KG also testified that on another occasion, in the bathroom of defendant's house, defendant was pulling her pants down and "trying to lick it," but was interrupted

when he heard KM coming. These were the only two instances of attempted first-degree sexual offense presented to the jury, and the jury convicted defendant on both charges. We have previously found no risk of a lack of unanimity where the defendant is charged with and convicted of the same number of offenses, and the evidence supports that number of offenses. *State v. Wiggins*, 161 N.C. App. 583, 593, 589 S.E.2d 402, 409 (2003). We find no error in defendant's convictions of these offenses. However, because these offenses were joined, for the purpose of sentencing, with three counts of indecent liberties, as to which we have granted defendant a new trial, we must remand these cases to the trial court for resentencing.

Defendant's fifth and final argument is that judgments in 03 CRS 53259-52 and 03 CRS 53264-52 are inconsistent with the jury's verdict sheets. Because we are granting defendant a new trial on most of the verdicts listed in these judgments, we need not address this argument.

| 03 CRS 53256 | First-Degree Sexual Offense | New Trial |
|---|---|---|
| 03 CRS 53257 | First-Degree Sexual Offense | New Trial |
| 03 CRS 53258 | First-Degree Sexual Offense | New Trial |
| 03 CRS 53258 | First-Degree Sexual Offense | New Trial |
| 03 CRS 53259 | First-Degree Sexual Offense | New Trial |
| 03 CRS 53260 | First-Degree Sexual Offense | New Trial |
| 03 CRS 53262 | Indecent Liberties | New Trial |
| 03 CRS 53263 | Indecent Liberties | New Trial |
| 03 CRS 53264 | Indecent Liberties | New Trial |
| 03 CRS 53257 | Indecent Liberties | New Trial |
| 03 CRS 53258 | Indecent Liberties | New Trial |
| 03 CRS 53259 | Indecent Liberties | New Trial |
| 03 CRS 53260 | Indecent Liberties | New Trial |
| 03 CRS 53263 | Attempted First-Degree Sexual Offense Remanded for Resentencing | |
| 03 CRS 53264 | Attempted First-Degree Sexual Offense Remanded for Resentencing | |

Judges HUDSON and JACKSON concur.